STEPHEN W. KUSKA *et al.*, Plaintiffs-Appellees, *v.* CLARENCE E. FOLKES *et al.*, Defendants-Appellants.

Second District   No. 78-4

Opinion filed July 2, 1979.

Clayton P. Voegtle, of Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, for appellants.

Stephen E. Delanty and Richard Prendergast, both of Delanty and Lanberis, of Palatine, for appellees.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

Clarence E. and Mary E. Folkes sold a house to Stephen W. and Susan B. Kuska. The Kuskas subsequently sued the Folkes for fraud and breach of contract. Jury was waived and the judge granted summary judgment for the Folkes on the breach-of-contract count of the complaint and this result was not appealed. However, after trial, the judge ruled against Folkes on the fraud count of the complaint and entered judgment in the amount of $3,200. The Folkes appeal this judgment contending that the trial court's finding was against the manifest weight of the evidence.

Under our view of the case, the dispositive question is whether the Kuskas introduced sufficient evidence of justifiable reliance to sustain a cause of action based upon an alleged intentional misrepresentation by the Folkes. A brief outline of the evidence adduced at trial will serve to highlight this issue.

In June of 1974, the Folkes entered into a contract to purchase a house and property in Lake Zurich from the Bank of Rolling Meadows. In connection with this transaction, the firm of "Arnold's Sewer and Septic Service" checked the septic system on the property and issued a receipt which contained the following language:

"Pump septic tanks, check and inspect septic field at 8 Summit, Lake Zurich—$75.00. Septic okay, will pass any inspections. (Signed). Arnold."

The property had been vacant for some months at the time of this inspection.

In July of 1974, the Folkes entered into a contract to sell this property. Although this transaction was never consummated, due to the prospective purchasers' inability to procure financing, Edward Cremerius, who was then acting as the Folkes' attorney, wrote a letter to the Lake County Health Department requesting an inspection report. On August 5, 1974, the health department responded by sending Cremerius a letter which stated that "[a]s the house has been empty for sometime there was no indication of any septic effluent surfacing at this time," but that an inspection of April 15, 1974, had shown that "[a]t that time this particular system was failing and covered a big portion of the backyard." The letter concluded:

"Before this house can be sold, the septic system must be

repaired or money put in escrow for the repair of the system or for hooking to the Lake Zurich Public Sewers. These repairs to be completed as soon as possible."

Clarence Folkes listed the property for sale with Kole Real Estate, a firm which employed him as its manager. Sometime near the end of August of 1974, a cooperating realtor showed the property to the Kuskas. The Kuskas later sent an offer to purchase the property, dated September 26, 1974, to the Folkes. In the margin of this offer, Mr. Kuska wrote, "Seller warrants the septic to be in good working order."

On or about the same time, Mr. Folkes sent a letter to the Lake County Health Department, stating that "the septic system has been checked and found in good working order"; a copy of the "Arnold's" statement was enclosed with the letter. Folkes also, through the realtor, sent the Kuskas a counteroffer which provided, "This property being sold as is," and eliminated any reference to the septic system. The counteroffer was presented to the Kuskas by the cooperating realtor; it was accompanied by a copy of the "Arnold's" statement, which had been given to the cooperating realtor by an "unknown individual from Kole Realty." The counteroffer contemplated an installment sale of the subject property, with articles of agreement for deed to be prepared by the sellers' attorney "in a form to be approved by the purchaser or his attorney." This counteroffer was accepted by the Kuskas.

On September 3, 1974, the Lake County Health Department sent a letter to the Folkes which stated that:

"* * * Although your letter from the Arnold Septic people stated that the septic system is working properly, it could be due to the house being vacant.

This Department feels that, when the house is occupied, a septic failure will again occur. On April 15, 1974, the entire backyard was covered with septic effluent. Before this house can be reoccupied, it must be connected to the sanitary sewers, as we feel there is not adequate room for repairs."

On October 29, 1974, the parties signed an "Installment Agreement for Warranty Deed," and an attached "Supplemental Agreement." The printed form installment agreement contained the following provision:

"* * * Seller warrants to purchaser that no notice from any city, village or other governmental authority of any dwelling code violation has heretofore been issued or received by owner or his agent."

The typed "Supplemental Agreement" provided that:

"Purchaser has examined the said premises and is satisfied with the physical condition thereof and hereby expressly agrees at his own expense, to maintain and care for said premises and the

improvements thereon, and to do all necessary decorating, painting and repairing, all subject to the attached agreement."

On November 1, 1974, the Kuskas moved into the house. Shortly thereafter, the Kuskas were contacted by the health department and told that the septic system would have to be replaced. By the spring of 1975, the backyard was a "semi-marshy swamp of septic effluent." Nonetheless, the Kuskas never contacted the Folkes about the septic problem. On April 25, 1975, the Kuskas paid the balance of the purchase price and the property was deeded to them. At the closing the Kuskas said nothing about their difficulties with the septic system. The Kuskas were subsequently forced to repair the septic system at considerable expense; in June of 1975, they filed the lawsuit at issue here.

Throughout the transaction, the Kuskas and the Folkes never dealt directly with one another. Instead, all of the negotiations were conducted through the realtors or the parties' attorneys. During the course of the transaction, the Kuskas were represented by attorney Lamberis while attorney Cremerius represented the Folkes. Lamberis, who was the law partner of the Kuskas' trial counsel, was not called to testify at trial.

However, attorney Cremerius testified for the Folkes. He stated that he had prepared the "Supplemental Agreement" which was attached to the "Installment Agreement for Warranty Deed," because he did not want to abandon the provision in the first contract that the sale of the property would be "as is." The recital that the "purchaser has examined the * * * premises and is satisfied with the physical condition thereof * * *" was intended to continue this aspect of the preliminary contract. Cremerius testified that Lamberis wanted this provision deleted from the contract since he wanted warranties in the contract regarding the condition of the property. Cremerius told Lamberis that he could not agree to any warranties, since "it was the sale of an as is building" and "there were problems with this building." Lamberis asked Cremerius if Cremerius "had any idea specifically what the problems were" and Cremerius responded that "there was a question about the septic system." Cremerius was asked if he, at that time, gave Lamberis a copy of the letter of August 5, 1974, from the health department and Cremerius responded, "As I recall, I did, yes." Cremerius also testified that if he had the letter from the health department dated September 30, 1974, he gave it to Lamberis as well, although he wasn't certain whether or not he had that particular letter. Cremerius stated that he made these disclosures to Lamberis on or around October 19, 1974, or in other words, sometime prior to the date of the installment agreement for warranty deed. Cremerius testified that the Kuskas never made any demand for the repair of the septic system.

■■ On appeal, counsel for the Kuskas states that the trial court could have disregarded the testimony of Cremerius since his testimony was

544

"equivocal." As this court recently held in a different context, a trial judge is not justified in ignoring the testimony of a credible witness on a material point. (See *People v. Gunsaullus* (1979), 72 Ill. App. 3d 440, ___) Here the fact that Cremerius qualified his testimony by stating that he "recalled" giving a copy of the August 5, 1974, letter from the health department to Lamberis, would not justify the trial judge in refusing to credit his testimony; the best that any witness can do, after all, is to testify regarding the recollection of past events, and the qualifier "as I recall," is an implicit preface to any eyewitness testimony.

Since Lamberis did not testify, Cremerius' testimony was uncontradicted and mandated a finding by the trial court that the Kuskas' attorney was informed of the septic system problem before the Kuskas entered into the installment contract.

Having reached this conclusion, it becomes clear that the application of certain basic rules of law mandate a reversal of the trial court's judgment.

■■ The first of these maxims is that a principal is deemed to have knowledge of all material facts of which his agent receives notice or acquires knowledge, while acting in the course of his employment and the scope of his authority. (See, *e.g., Van Hulle v. State Farm Mutual Automobile Insurance Co.* (1969), 44 Ill. 2d 227, 231.) Thus, in this case, it is clear that the Kuskas must be charged with having had notice of the fact there was a problem with the septic system, and of the August 5 letter from the health department, before they signed the "Installment Agreement for Warranty Deed," since their attorney, Lamberis, had received this information, even if we were to assume Lamberis never told the Kuskas about it.

■■ The second principle applicable here involves a crucial element of any cause of action for fraud—justifiable reliance. One who seeks relief on account of fraudulent statements must have justifiably relied on the statements; and in general, "[i]t is only where the parties do not have equal knowledge or means of knowledge of the facts represented, * * * that a person may justifiably rely upon the representations of another." *Costello v. Liberty Mutual Insurance Co.* (1976), 38 Ill. App. 3d 503, 508.

In this case, the Kuskas convinced the trial court that the communication of the "Arnold's" statement, and perhaps also the warranty in the installment agreement that no notice of any dwelling code violations had been received, constituted actionable misrepresentation. However, since the Kuskas must be regarded as having had notice of the septic system problem and the August 5 health department letter, prior to the time that they entered into the installment agreement, the record will not sustain a finding that the Kuskas justifiably relied on these misrepresentations.

■■ The Kuskas have argued that they relied upon the "Arnold" statement when they entered into their initial agreement with the Folkes on or about September 26, 1974, *before* their attorney was told of the septic problem. The difficulty with this argument is that the initial agreement, which resulted when the Kuskas accepted the Folkes' counteroffer, was not a contract and did not bind the Kuskas to go through with the transaction. The Kuskas were free to abandon the purchase without penalty at any time up to the point when they signed the installment agreement for warranty deed. The reason that the preliminary agreement, dated September 26, was not an enforceable contract, was that it required that the parties subsequently agree on all of the terms of the installment contract for the purchase of the property. It is basic contract law that "[w]hen any essential term of an agreement is left to future negotiation, there is no binding contract." (*Hintz v. Lazarus* (1978), 58 Ill. App. 3d 64, 67; see also *Lencioni v. Brill* (1977), 50 Ill. App. 3d 802.) Here the form of the installment agreement was left entirely to future negotiations, and the Kuskas cannot be held to have materially changed their position prior to signing the installment agreement.

■■ Instead, the record compels a finding that the Kuskas had, constructively, the same knowledge of the defects in the septic system as the seller when they entered into the contract to purchase the subject property. The element of justifiable reliance was therefore not proven by the Kuskas, and the judgment of the trial court was thus against the manifest weight of the evidence.

The judgment of the circuit court of Lake County herein is therefore reversed.

Judgment reversed.

NASH and LINDBERG, JJ., concur.