**Michael J. DELANY, Plaintiff,**

v.

**BLUNT, ELLIS & LOEWI, John Peterson, Michael Patterson, Quantum Resources Corporation, John E. Thomas, J.E.H. Knutson, Woodrow "Woody" Wilson, Rudy C. Schreider, Jr., Continental Illinois National Bank & Trust Company of Chicago, and the First National Bank of Denver, n/k/a Intrawest Bank of Denver N.A.**

No. 84 C 20145.

United States District Court, N.D. Illinois, W.D.

March 18, 1986.

Dale F. Conde, Pedderson, Menzimer, Conde, Stoner & Killoren, Rockford, Ill., for plaintiff.

Michael O'Brien, Clark, McGreevy & Johnson, Elmer C. Rudy, Williams & McCarthy, Rockford, Ill., John W. Rotunno, Bell, Boyd, Lloyd, Fern C. Bomchill, Mayer, Brown & Platt, Chicago, Ill., for defendants.

## ORDER

ROSZKOWSKI, District Judge.

Before the court are the motions to dismiss of defendants Continental Illinois National Bank and Trust Company of Chicago and First Interstate Bank of Denver, N.A. For the reasons stated herein, defendant's motions to dismiss are granted.

### I. BACKGROUND

The present action stems from plaintiff's investment in a limited partnership known as Quantum Natural Resources Fund 1981–F Oil and Gas Drilling Program, Ltd. ("1981–F"). According to the complaint, the limited partnership interests in 1981–F were sold by the corporate general partner, defendant Quantum Resources Corporation ("Quantum"). Defendants Thomas, Knutson, Wilson and Schreider were the officers and directors of Quantum. Defendant Blunt, Ellis & Loewi prepared the prospectus used by potential investors in 1981–F. Defendants Continental Illinois National Bank and Trust Company of Chicago ("Continental") and First Interstate Bank of Denver, N.A.[1] ("First Interstate") (collectively "the banks") provided loans for those limited partners who chose to finance their investment.

As an alternative to full cash payment, 1981–F's financing option allowed limited partner investors to pay one-third of the purchase price of their investment in cash and borrow the remaining two-thirds from Continental and First Interstate. The limited partners who chose this option, as plaintiff in this case did, were required to execute a special limited power of attorney

---

1. Formerly known as First National Bank of Denver.

naming Quantum as their agent and attorney-in-fact. As security for the loan, each limited partner was required to provide an irrevocable letter of credit. Armed with the powers of attorney and letters of credit, Quantum negotiated and executed a term loan agreement (the "Agreement") with the banks on behalf of the limited partners.

At the heart of plaintiff's dispute with the banks is the "cross-default" provision in the Agreement. This "cross-default" provision, found in Section 8 of the Agreement, provides that a default of the loan would be deemed to occur in the event of a failure to make payment when due of any indebtedness of the limited partners, Quantum, its subsidiaries, or 1981–F.[2]

In February of 1983, one of the specified cross-defaults occurred: Quantum defaulted on one of its separate loan agreements with the banks. As a result of the cross-default, the banks accelerated the due date of plaintiff's loan. Following a demand for repayment, the banks drew upon the security plaintiff had provided for the loan, his letter of credit.

Plaintiff's original action against the banks was a common law claim for conversion of his letter of credit. Following an attempted dismissal by the banks, plaintiff amended his complaint charging the banks with securities fraud violations. Specifically, plaintiff's amended complaint alleges that the banks were liable as aiders and abettors to: (1) violations of 15 U.S.C. § 77 l of the Securities Act of 1933; and (2) violations of 15 U.S.C. § 78(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b–5 (col-lectively "Rule 10b–5"). The 1933 Act claims were dismissed by this court on August 13, 1985, for plaintiff's failure to affirmatively plead compliance with the governing statute of limitations.

As to the remaining Rule 10b–5 count, plaintiff alleges that the banks are liable as "aiders and abettors" because they "knew" or "recklessly disregarded" the fact that the prospectus issued by Quantum in relation to 1981–F contained "misrepresentations and omissions". Amended Complaint, Count VIII, ¶ 14. Basically, plaintiff alleges that unbeknownst to him, his letter of credit allegedly could be and was called due to defaults by the general partner in 1981–F (Quantum) in its loan agreements with the banks; in other words, plaintiff alleges that he was not aware of or informed of the cross-default provision in the Agreement. The only factual allegation against the banks is that they knew or should have known of the allegedly misleading nature of the prospectus but allowed their names to appear in it nonetheless.

## II. DISCUSSION

### A. The Banks' Duty

A fair reading of the Amended Complaint suggests that plaintiff is claiming that the cross-default provision had the effect of rendering his letter of credit security for debts other than his own. Nothing in the language of the cross-default provision or any other portion of the Agreement even remotely suggests that the proceeds of his letter of credit could be applied towards satisfying any indebtedness other than his own i.e. the financed portion of his

---

**2.** According to the amended complaint, Section 8 of the term loan agreement provides:

§ 8.1 *Events of Default.* Each of the following shall constitute an event of default under this agreement:

§ 8.1.2 *Non-Payment of Other Indebtedness for Borrowed Money.* Default in the payment when due (subject to any applicable grace period), whether by acceleration or otherwise, of any other indebtedness for borrowed money of, or guaranteed by the company [Quantum] or any subsidiary, the Quantum Fund or any of the limited partners, or default in the performance or observance of any obligation or condition with respect to any such indebtedness, if the effect of such default is to accelerate the maturity of any such indebtedness or to permit the holder or holders thereof or any trustee or agent for such holders, to cause such indebtedness to become due and payable prior to its express maturity (except only to the extent that the existence of any such default is being contested by the company [Quantum] such subsidiary, the Quantum Fund [1981–F] or such limited partner in good faith and by appropriate proceedings.)

limited partnership interest in 1981–F. *See* note 2, *supra.* Also, the Amended Complaint makes no claim that the banks used the proceeds from plaintiff's letter of credit other than to satisfy his limited partnership debt.

Perhaps recognizing the misleading nature of his Amended Complaint, plaintiff attempts to clarify the substance of his Rule 10b–5 allegations against the banks in his responsive memorandum. Because of their previous dealings with Quantum, their knowledge of the Agreement, and their access to the prospectus and other investor information:

> [the banks] had actual knowledge of the fact that investors were not apprised of the fact that the term loan agreement allowed for letters of credit to be called in the event Quantum defaulted on other obligations to [the banks].

Plaintiff's Memorandum in Opposition at 4–5. The banks also "recklessly and knowingly failed to provide this critical information to investors to whom they lent money to purchase the [limited partnership interests in 1981–F]." *Id.* at 5.

■ What plaintiff's argument overlooks is the fact, alleged in his own complaint, that he appointed Quantum his agent by virtue of the power of attorney for purposes of negotiating the Agreement. As the banks point out, plaintiff is legally charged with the knowledge of his agent. *See* Restatement (2d) Agency § 268; *see also VanHulle v. State Farm Mutual Automobile Insurance Co.,* 44 Ill.2d 227, 231, 254 N.E.2d 457 (1969); *Kuska v. Folkes,* 73 Ill.App.3d 540, 544, 29 Ill.Dec. 399, 391 N.E.2d 1082 (1979). The banks were not under any independent duty to assure that plaintiff's agent properly transmitted all relevant information regarding the Agreement to plaintiff. Since as a matter of law plaintiff is therefore charged with knowledge of the cross-default provision, any alleged disclosure "omission" by the banks could not have been "material", an element essential to a Rule 10b–5 claim.

*See S.E.C. v. Coffey,* 493 F.2d 1304, 1313 (6th Cir.1974), *cert. denied,* 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975) (finding no Rule 10b–5 action since "[t]here is no duty to disclose information to one who reasonably should be aware of it."); *see also Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033, 1048 (7th Cir.1977) ("In a nondisclosure case [under Rule 10b5], reliance is vitiated if the plaintiff is chargeable with the omitted information."). Any claim that plaintiff was in fact not informed of the cross-default provision is more properly brought against his agent, Quantum.

The Fifth Circuit decision in *Woodward v. Metro Bank of Dallas,* 522 F.2d 84 (5th Cir.1975), further supports the conclusion that plaintiff has no Rule 10b–5 claim against the banks. In *Woodward,* the president of a "securities issuer"[3] convinced the investor-plaintiff to cosign a note and pledge certain stocks and money as collateral in order that the securities issuer could obtain working capital. The plaintiff's collateral was pledged against "all indebtedness now owing to [the lender-bank] or which may hereafter become owing" and thus became cross-collateral for other loans. The bank did not specifically point out the cross-collateral provision to the plaintiff.

Unbeknownst to the plaintiff, at the time of the loan transaction, both the securities issuer and its president owed substantial amounts to the bank. Shortly after the loan transaction was completed, the securities issuer declared bankruptcy and defaulted on its loan obligation. The bank applied the plaintiff's money as cross-collateral for these loans and threatened to also foreclose on the pledged stocks. The plaintiff responded by suing the bank as an aider and abettor of a Rule 10b–5 violation.

The test for aider and abettor liability under Rule 10b–5, as set down by the *Woodward* court, is three fold:

---

**3.** While not expressly deciding the issue, the Fifth Circuit assumed that the underlying trans-

action in *Woodward* amounted to issuance of a security. 522 F.2d at 95.

(1) there must have been a securities law violation by the primary party (as opposed to the aiding and abetting party);

(2) The aider and abettor must have had "knowledge" of the violation; and,

(3) the aider and abettor must have rendered "substantial assistance" to the primary party.

*Woodward*, 522 F.2d at 97. *See Metge v. Baehler*, 762 F.2d 621, 624 (8th Cir.1985).[4] Specifically addressing the "substantial assistance" prong of the test, the *Woodward* court held:

> In the absence of any duty to read and explain the [loan] document to the signers, we cannot hold that [the banks] silence on [the cross-collateral clause] was the sort of knowing and substantial assistance required for aiding and abetting liability. What is far more likely is that as a matter of normal business practice [the bank] never explained these documents to signers—sharp dealing, perhaps, but not as a 10b-5 violation.

522 F.2d at 99.

The facts of *Woodward* present a much more compelling case for aiding and abetting liability than those of the instant case and *still* no 10b-5 violation was found on the part of the bank. The *Woodward* plaintiff had dealt face-to-face with the banker. Here, the banks dealt with plaintiff's authorized agent, Quantum. The cross-collateral clause in *Woodward* allowed the plaintiff's collateral to secure not only her own indebtedness, but undisclosed indebtedness of the securities issuer. Here, plaintiff's letter of credit stood only as security for his own debt.

In short, even assuming that plaintiff was not specifically informed of the cross-default provision, whether directly or through Quantum, this type of nondisclosure does not provide the "substantial as-

sistance requisite to Rule 10b-5 aiding and abetting liability without some special duty. The banks owed no such duty here. As stated by Judge Aspen in *D & G Enterprises v. Continental Illinois National Bank and Trust Co. of Chicago*, 574 F.Supp. 263, (N.D.Ill.1983):

> The duty to disclose under Rule 10b-5 does not require any person who is a party to a securities transaction to disclose all material, non-public information... and a mere failure to disclose material information, absent other compelling legal circumstances does not operate as a fraud....Rather, the duty to disclose 'attaches only when a party has legal obligations other than a mere duty to comply with the general antifraud proscriptions in the federal securities law"....

*Id.* at 269 (quoting *Dirks v. S.E.C.*, 681 F.2d 824, 837 (D.C.Cir.1982), *rev'd on other gnds*, 463 U.S. 646, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983)). In dismissing the Rule 10b-5 count against Continental Bank, Judge Aspen concluded that:

> while a complaint brought pursuant to Rule 10b-5 need not plead the existence of a fiduciary relationship per se, the instant complaint must allege some facts which establish a duty on the part of Continental to disclose information to plaintiffs.

*Id. See also Rothschild v. Teledyne, Inc.*, 328 F.Supp. 1054, 1056 (N.D.Ill.1971) ("some relationship must exist between plaintiff and defendant which imposes a duty upon the defendant to disclose material information to plaintiff in connection with his purchase or sale of security.... mere possession and nondisclosure of material facts does not confer liability".)

Since plaintiff has failed to plead anything which would begin to indicate that

---

**4.** Both the Supreme Court and the Seventh Circuit have specifically "left for another day" whether aiding and abetting is a proper 10b-5 theory. *See Herman & McLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 686 n. 5, 74 L.Ed.2d

548 (1983); *Sundstrand*, 553 F.2d at 1044 n. 15. The three-part *Woodward* test has been accepted with slight variations by the nine circuits to have considered the issue. *See Woods v. Bar-*

the banks owed him a special duty[5] his Rule 10b–5 claims must fail. While nondisclosure of the cross-default provision might constitute "sharp dealing" by the banks, it does not indicate the "substantial assistance" requisite to a Rule 10b–5 aiding and abetting claim.

## B. The Alleged Contradictions Between the Prospectus and the Agreement.

Plaintiff alleges that the banks are liable as aiders and abettors because the cross-default provision contradicted portions of the prospectus. The specific contradictions alleged are:

1. Paragraph 15 of the prospectus, which stated that the partnership and its limited partners would not be liable for the repayment of any loans to the general partners not related to partnership activities (Amended Complaint, Count VIII, ¶ 11A);

2. Page 22, which stated that there would be no commingling of funds between the partnership and the general partners or other entities, that the partnership would not be liable for debts except those incurred on its behalf, and that partnership assets would be maintained, to the extent possible, so as not to be subject to attachment by the creditors of the general partners (*Id.* at 11C);

3. Page 25, which disclosed that letters of credit obtained by the limited partners would be pledged as security for the repayment of amounts borrowed by the corporate general partners on behalf of the limited partners (*Id.* at 11D);

4. Paragraph 6.5, which disclosed that the general partners might borrow funds for purposes unrelated to partnership activities which neither the partnership not the limited partners would be liable to repay (*Id.* at 11E); and,

5. Paragraph 15.3 by which the limited partners appointed the corporate general

partner their attorney in fact. (*Id.* at 11F)

■ As stated previously, nothing in the language of the cross-default provision indicates that plaintiff's letter of credit could be, or was, used toward repayment or as security for loans other than the one underlying his own partnership debt. Plaintiff recognizes as much as his Memorandum in Opposition. Thus, the cross-default provision does not conflict with the specific prospectus statements set forth. How the appointment by plaintiff of Quantum as his attorney-in-fact states a securities violation against the banks is anyone's guess.

## C. Mere Mention in the Prospectus

■ Plaintiff also attempts to hold the banks liable under Rule 10b–5 due to the fact that they were mentioned in the prospectus "as being involved as lending institutions for the general partners and 1981–F...." Amended Complaint, Count VIII, ¶ 5. This minimal level of involvement in an alleged securities fraud cannot form the basis of a Rule 10b–5 claim. *See Cleary v. Perfectune, Inc.,* 700 F.2d 774 (1st Cir. 1983) (no aiding and abetting liability where offering Memorandum named defendants as officers and directors when they were not even though defendants failed to correct the misrepresentation). Cf. *Wright v. Schock,* 571 F.Supp. 642, 658 (N.D.Cal.1983), *aff'd* 742 F.2d 541 (9th Cir. 1984) (1933 Act); *Matthews v. Fisher,* Fed. Sec.L.Rep. (CCH) ¶ 97336 at 97227 (S.D. Ohio 1978) (1933 Act).

## D. Miscellaneous Allegations

■ Plaintiff seeks to hold the banks liable since copies of the Agreement were not distributed with the prospectus. *See* Amended Complaint, Count VIII, ¶ 10, 11B. As an alternative, plaintiff suggests that the prospectus should have set forth the

*nett Bank of Ft. Lauderdale,* 765 F.2d 1004, 1009 n. 8 (11th Cir.1985).

5. Indeed, the agency alleged between Quantum and plaintiff argues against the existence of any such duty.

terms of the Agreement. *Id.* These allegations are without merit.

In the first place, since the Agreement was executed subsequent to the issuance of the prospectus, it is at best unrealistic to suggest it could have either been distributed with, or included in, the prospectus. Also, any duty to provide copies of the Agreement to limited partners rested with Quantum as agent, not with the banks.

## CONCLUSION

Nothing in the amended complaint indicates that the bank's participation in 1981–F amounted to anything more than the ordinary commercial transaction of supplying financing to the limited partner investors. Any duty to disclose the terms of the Agreement rested with Quantum, not the banks. The mere act of extending financing does not form the basis for an implication of the "substantial assistance" required for aiding and abetting liability. *See Seattle First National Bank v. Carlsteadt,* 101 F.R.D. 715 (W.D.Okla.1984); *Cosmopolitan Credit and Investment Corp. v. Blythe Eastman Dillon and Co., Inc.,* 507 F.Supp. 954, 962 (S.D.Fla.1981). *See Also Woodward,* 522 F.2d at 97 ("If the evidence shows no more than a transaction constituting the daily grist of the mill, we would be loathe to find 10b–5 liability without clear proof of intent to violate the securities laws"); *Decker v. Massey Ferguson, Ltd.,* 534 F.Supp. 873, 883 (S.D.N.Y. 1981) ("what meager facts have been alleged are themselves neutral only, with conclusory allegations appended to them").

The banks are not alleged to have issued, or participated in the preparation of, the allegedly misleading prospectus. Contrary to plaintiff's assertion the cross-default provision does not contradict the prospectus. Mere mention in the prospectus, without more, does not subject the banks to securities fraud liability.

Thus, since no basis for Rule 10b–5 aiding and abetting liability is present in this case, the banks' motions to dismiss are granted.