**Debra KEACH and Patricia Sage, Plaintiffs,**

v.

**U.S. TRUST COMPANY, N.A., et al., Defendants.**

No. 01–1168.

United States District Court, C.D. Illinois.

Feb. 24, 2003.

Dean B. Rhoads, Robert Rhode, Edward Sutkowski, Steven Oates, Sean Anderson, Sutkowski & Rhoads, Peoria, IL, for Plaintiffs.

Timothy Bertschy, Heyl, Royster, Voelker & Allen, Peoria, IL, Robert Eccles, Shannon M. Barrett, O'Melveny & Myers LLP, Washington, DC, for U.S. Trust Co., defendant.

Charles Roth, James Springer, Joseph Z. Sudow, Kavanagh, Scully, Sudow, White & Frederick, Peoria, IL, Michael T. Graham, Nancy Ross, McDermott, Will & Emery, Chicago, IL, Trent P. Cornell, Duane Morris LLC, Chicago, IL, for Ellen D. Foster, defendant.

Richard J. Pautler, Jennifer Baetje, Thompson & Coburn, St. Louis, MO, for Robert A. Ostertag, Jr., Terry P. Cole, Alan R. Dix., Jon Elletson, A. Robert Pellegrino, defendants.

James Bailey, Paul Ondrasik, Jr., Steptoe & Johnson, Washington, DC, Roy Davis, David Lubben, Davis & Campbell LLC, Peoria, IL, for Valuemetrics, Inc., defendant.

Mark Casciari, Ian Hugh Morrison, Sari M. Alamuddin, Seyfarth Shaw, Chicago, IL, for Houlihan, Lokey, Howard & Zukin, Inc., defendant.

Stephen Gay, Jeffrey Alan Ryva, Husch & Eppenberger LLC, Peoria, IL, for Lyle Dickes.

Jeffrey Rock, Hasselberg, Rock, Bell & Kuppler, Peoria, IL, for James Fried.

Charles Roth, James Springer, Kavanagh Scully Sudow White and Frederick, Peoria, IL, for Stephen P. Bartley, Dale Fujimoto, Michael Norbutas, Frederick Stuber, Ashley Anne Foster, Melvyn R. Regal, defendants.

John Elias, Robert Riffle, Cynthia Elias, Elias, Meginnes, Riffle & Seghetti, Peoria, IL, for William Gehring, Henry Gregory, II, John F. Halpin, James Kyle, John Lappegaard, George McKittrick, Clayton Patino, Jerry Rathmann, W. Thomas Stumb, Mark Swedlund, Leo Vanderlugt, Robert Wilson, Bruce Wright, defendants.

Dean Essig, Washington, IL, for Gregory McAllister, defendant.

## ORDER

MIHM, District Judge.

Now before the Court is a Motion for Summary Judgment by Defendants William J. Gehring ("Gehring"), Clayton Pati-

no ("Patino"), Henry R. Gregory, II ("Gregory"), Jerry L. Rathmann ("Rathmann"), John F. Halpin ("Halpin"), Mark Swedlund ("Swedlund"), James H. Kyle ("Kyle"), Leo A. Vandervlugt ("Vandervlugt"), John Lappegaard ("Lappegaard"), Robert J. Wilson ("Wilson"), George McKittrick ("McKittrick"), and Bruce B. Wright ("Wright") (hereinafter referred to collectively as the "Gehring Defendants"). For the reasons set forth below, the Motion for Summary Judgment [# 378] is GRANTED.

## FACTUAL BACKGROUND

The basic factual background has been sufficiently set forth in the prior orders of this Court, and familiarity therewith is presumed. The present motion is brought by the Gehring Defendants, who are in this suit only as parties-in-interest in Count IX of the First Amended Complaint. Gehring was the Senior Vice President of Information Systems and Chief Information Officer for F & G. Gregory was F & G's Senior Vice President of Advertising. Halpin, Kyle, and Lappegaard were respectively the Vice President of Marketing, Vice President of Facilities and Development, and the President of Spring Hill Nurseries, an F & G subsidiary. McKittrick was the Vice President of Customer Sales and Service for F & G. Patino was the President of MMI, another subsidiary of F & G. Rathmann was F & G's Senior Vice President of Operations. Swedlund was the President of The Children's Group, another F & G subsidiary. Vandervlugt was the General Manager of the Breck Bulb Division of F & G. Wilson was the Director of Production for F & G, and Wright was F & G's Senior Vice President of Advertising.

The matter is now fully briefed and ready for resolution. This Order follows.

## DISCUSSION

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir.1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989). Summary judgment will be denied where a reasonable fact-finder could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir.1995).

The Gehring Defendants are in this case only as non-fiduciary parties-in-interest pursuant to § 406(a) of ERISA, which prohibits a "sale or exchange . . . of any property between the plan and a party in interest," and also prohibits a "transfer to . . . a party in interest . . . of any assets of the plan." 29 U.S.C. § 1106(a)(1)(A) and (D). ERISA further defines a "party in interest" to include any fiduciary, person providing services to the plan, an employer, an employee/officer/director or 10% shareholder of an employer, or any relative of these individuals. 29 U.S.C. § 1002(14). There is no dispute that these Defendants qualify as parties in interest.

■ As the Court has previously held and hereby incorporates by reference, once Plaintiffs establish that the purchases of stock by the ESOP constituted a prohibited transaction under § 406, § 502(a)(3) then provides a right of action to seek appropriate equitable relief from parties-in-interest to redress the violation. *Harris Trust*, 120 S.Ct. at 2188, *citing* § 502(*l*)(1)(B). Borrowing from the law of trusts, the Defendants can then invoke the substantive equivalent of a modified bona fide purchaser defense by establishing that they gave value for the trust property. If the Defendants are able to make such a showing, a presumption of good faith attaches, and the burden shifts back to the Plaintiffs to establish that Defendants acted in bad faith or had actual or constructive notice of the circumstances that rendered the transaction unlawful.

■ Plaintiffs have conceded that at least for purposes of these motions, they do not contest that the stock purchase transactions were for "value" in the sense that they were not gratuitous but rather involved consideration that was more than nominal. Accordingly, the Gehring Defen-

dants are entitled to a presumption of good faith and lack of knowledge unless Plaintiffs are able to rebut that presumption.

■ Initially, the Court notes that Plaintiffs make no effort to demonstrate actual knowledge on the part of any of these Defendants, relying instead on a constructive knowledge theory. In this respect, the Court's review is complicated by the fact that Plaintiffs have made virtually no effort to address the knowledge of each of the individual Defendants. Rather, Plaintiffs seem to assume that the Gehring Defendants all have equal knowledge and can be dealt with as a group. However, there is no support for this assumption in either the record for this case or the applicable law, which makes clear that guilt by association is insufficient; the knowledge necessary to establish the liability of a non-fiduciary party-in-interest must be determined on an individual basis and cannot be based on what some other party knew. *See Harris Trust*, 120 S.Ct. at 2189–90. It is not the responsibility of this Court to root through the record like a pig in search of truffles to determine whether there is a factual basis for the assertion that any given Defendant had the requisite knowledge to support a finding of liability; that burden rests with Plaintiffs, and their failure to attempt to meet this burden on an individual basis is fatal to their claim. Moreover, as set forth below, even if the Court were to wade through the record in an effort to determine whether there is sufficient evidence for the claim against any of the Gehring Defendants to proceed to trial, these Defendants would nevertheless be entitled to judgment in their favor.

■ Plaintiffs argue that the Gehring Defendants undertook no independent investigation or inquiry with respect to the transactions. However, this puts the cart

before the horse, as these Defendants are not fiduciaries, and the law does not impose such an onerous duty on non-fiduciaries in the absence of notice of the need to do so. In addition to being non-fiduciaries, these Defendants were not Board Members, Executive Committee Members, or members of the ESOP Administrative Committee. They were not employed in the F & G financial department or by MBC, and to their knowledge, business was quite good for F & G at the time of the transactions, as F & G continued to have a strong financial performance through the first two quarters of 1997. Moreover, the Court is unaware of any evidence linking any of these Defendants to the process of structuring the stock purchase transactions, determining the value of shares to be sold, or negotiating the stock purchase price.[1] In fact, six of the Gehring Defendants were not even directly involved in the operations of F & G but rather were employed by various subsidiaries. Access to certain information that was made available or known to the F & G Board or Executive Committee cannot be presumed but must be proven, and it is that proof that is lacking here.

Plaintiffs attempt to demonstrate knowledge by stating that some of the Gehring Defendants were involved in the due diligence process when F & G bought MBC in 1992 and "received materials indicating that increased state regulation of sweepstakes was a concern of MBC." However, the authority cited for this assertion is one line in a 70–page document listing "[i]ncreased state regulation of sweepstakes— first round winner" as one of 12 concerns of the business. The suggestion that this was sufficient to place even those Defen-

dants who actually participated in the process and received the materials on notice of circumstances rendering the transaction unlawful is without merit. Plaintiffs also reference reports authored by Gehring, Rathmann, and Wright in connection with the due diligence of MBC, but those reports involved their perception of areas to be improved on in information services, purchasing, shipping, customer service, and graphics, rather than any issues material to this case.

Plaintiffs insinuate that the difference in the due diligence performed in 1995 from the investigation that was performed with the acquisition of MBC in 1992 should have put the Gehring Defendants on notice of impropriety. Even assuming that these Defendants had some basis to know that the due diligence that was performed by U.S. Trust and its advisors was less than had been performed with respect to MBC in 1992, Plaintiffs' bald assertion that the scope of due diligence for the stock purchase transaction should necessarily have been of the same magnitude as the due diligence done by the company in preparation for the potential acquisition of a new corporation to be integrated into the F & G family is both nonprobative and logically unsound. They further argue that these Defendants knew or should have known that U.S. Trust had resolved to rely on the representations of F & G management when conducting its due diligence, citing to the engagement letter between U.S. Trust and F & G. However, Plaintiffs fail to demonstrate that these Defendants obtained or were aware of this information. At this stage in the litigation, this failure is inexcusable, as assertions without factual

---

1. The fact that these Defendants attended a meeting at the Country Club where they were allowed to ask questions about the transaction after the structure and mechanics of the deal had already been determined does not establish or even raise a question of fact with respect to the Gehring Defendants' statement that they played no role in structuring the transaction, determining the value of the stock or negotiating the purchase price.

support in the record cannot survive summary judgment.

Plaintiffs note that "Dependency on sweeps—possible threats" and "Governmental regulation" were listed among the topics to be discussed at a summer leadership meeting in 1993. However, there is no indication in the documents cited that these discussions involved anything other than presenting a possible business problem or inefficiency for which a corrective solution was being proposed for action in the near term. There is no indication of attorney general investigations, regulatory inquiries, or anything else that would indicate that the situation was critical or exposing MBC, and therefore F & G, to imminent financial ruin, particularly as these Defendants would also have been aware that MBC continued to make record profits despite these possible problems.

Plaintiffs then point to three other facts in an attempt to establish knowledge. In May 1995, Gehring personally received correspondence from one MBC customer complaining that MBC's business practices were fraudulent and misleading. Patino received a memo from Ostertag in August 1993 containing a brief discussion of MBC's plans for monitoring and compliance with sweepstakes legislation including the retention of outside counsel specializing in that area of the law and also received a memo from Stumb in September 1993 setting forth aspects of Illinois and Georgia law regarding sweepstakes and indicating that both MBC and MMI should be exempt under the Illinois law. With all due respect, the suggestion that receiving one consumer complaint in a number of years is sufficient to vest Gehring with constructive knowledge, or that being informed of potential state regulation on two occasions alerted Patino to impending crisis, is ludicrous. These documents do not mention pending attorney general investi-

gations or regulatory inquiries into F & G or MBC's business, and nothing in them would have reasonably apprized Gehring or Patino, much less the other ten Gehring Defendants, of the improprieties to which Plaintiffs allude. Plaintiffs also cite to correspondence from Norbutas in June and July 1995 and a December 1995 tax opinion from Price Waterhouse as evidence of knowledge but fail to recognize that none of the Gehring Defendants are indicated recipients of any of this correspondence.

From these non-probative assertions, Plaintiffs then make the conclusory statement:

> Like Gehring and Patino, many of the other Gehring Defendants: (a) were aware that the continued ability to generate successful sweepstakes promotions was critical to MBC's success; (b) had attended meetings or strategic planning sessions where regulatory problems, including sweepstakes litigation, were discussed as a threat to the business; (c) had been privy to discussions where the necessity for changes to the sweepstakes elements of F & G or MBC mailings, e.g. "you-have-already-won," had been discussed; and/or (d) knew the company regularly fielded inquiries from attorneys general regarding consumer complaints.

Plaintiffs' Response at 57. However, this statement is misleading in that it suggests that the other Gehring Defendants each had all of this information and in some cases misrepresents the record cited.

The cited portions of Kyle's deposition admits that he became generally aware of MBC's investigations, but not until 1999, more than a year after the second of the stock purchase transactions was finalized. Lappegaard stated that he became aware of one attorney general investigation of MBC but does not indicate when he obtained this knowledge. Swedlund, Patino,

and Rathmann knew that MBC was a sweepstakes business and that dependency on sweepstakes marketing was generally an issue to be addressed with that company. Patino had also heard about the need to change the way notifications were presented in sweepstakes marketing on one occasion. McKittrick and Wright attended leadership meetings where the need to diversify MBC's marketing strategies and state regulation may have been discussed in general terms. While McKittrick was familiar with the fact that F & G sometimes received inquiries in response to consumer complaints about other business, he flatly denied ever having knowledge of any attorney general investigations or regulatory inquiries of MBC because the Peoria office was not a call center for MBC and did not handle MBC's business. There is no indication in any of this testimony that any of these Defendants knew or reasonably should have known about the numerous consumer complaints, attorney general investigations, or regulatory inquiries, or had any idea that MBC was actually in trouble.

Gehring, Gregory, Lappegaard, Patino, Rathmann, and Swedlund received a copy of a memorandum from Dickes dated August 25, 1995. The memorandum refers to an overview of the proposed ESOP transaction that was apparently given during the Summer Leadership Meeting that they had attended and informs the recipients of the arrangements that were being made with institutional lenders, as well as the due diligence that would be performed by both the potential lenders and the valuation firms. On November 2, 1995, a memorandum was sent to "All Peoria Officers" announcing the closing of MMI as "[c]hanges in the stampsheet/sweepstakes business have had a very negative effect on the magazine agency business." Again, the Court finds this evidence non-probative of the requisite notice or knowledge.

On November 14, 1995, there was another meeting at the Country Club where certain officers were updated as to the details of the proposed stock purchase transaction. The testimony of Gehring, Lappegaard, McKittrick, Rathmann, Swedlund, and Wright indicates that they were present for this meeting; however, the testimony also indicates that what was discussed at that meeting was nothing more than a general overview of the transaction plus the opportunity for shareholder participants to obtain information regarding their personal participation in the transaction. There is no indication that any of the discussion would have reasonably put these Defendants on notice that inadequate due diligence was being conducted or that material information was being withheld from the trustee and its advisors.

Each of the Gehring Defendants then received a copy of a Confidential Disclosure Memorandum dated November 10, 1995, which contained the general structure of the proposed ESOP transaction, as well as information particular to their individual participation. On page 26 of their response brief, Plaintiffs cite portions of the Disclosure Memorandum which actually cut in favor of Defendants, as they put these Defendants on notice that as the ESOP Trustee, U.S. Trust had certain obligations: it must comply with ERISA; it might be required to override company instructions if fiduciary issues arise; it must demonstrate its loyalty to the interests of the ESOP beneficiaries; and it must exercise appropriate prudence and diligence. The Disclosure Memorandum also represented that the price was the result of arms-length negotiations and that certain factors that could affect the post-transaction value of the shares had been considered in some fashion. At best, the document put these Defendants on notice

of the fact that book value restrictions were being removed and vesting of shares was being accelerated for the transaction. While this information may have put the Gehring Defendants on notice that they were getting a good deal, it would not cause a reasonable person in their positions to infer that something sinister or improper was afoot.

Plaintiffs then point to the representations made by all of the selling shareholders in the Agreements to Purchase Stock. Specifically, they cite paragraph 3.B. of the Recitals section, which acknowledges that each seller has received a copy of and is familiar with the Disclosure Memorandum with its exhibits and enclosures, including the Private Placement Memorandum from BA Securities, Inc., F & G's audited financial statements, and Valuemetrics' Transaction Memorandum. The Gehring Defendants also received a confidential memorandum from Regal dated November 29, 1995. In this memorandum, Regal notes a decline in the market value of most publicly traded direct marketing companies and then goes on to state that this fact "greatly influenced the decision process of the ESOP Trustee, U.S. Trust Company, it's financial advisor, Houlihan Lokey Howard & Zukin and ourselves in reaching an agreement on a price for the stock that we would sell to the ESOP." This would have been completely consistent with their knowledge that the purchase price for the 1995 transaction had been negotiated down from $24.00 per share to $19.50 per share.

On December 7, 1995, Valuemetrics issued a Confidential Transaction Memorandum that was distributed to each of these Defendants, providing them with a detailed explanation of the mechanics of the stock purchase transaction. Plaintiffs then assert that these Defendants were similarly informed of the pertinent details regarding the 1997 stock purchase transaction.

With all due respect, the information discussed in the preceding paragraphs, even when considered cumulatively with all inferences *reasonably* drawn therefrom, does not establish constructive knowledge of a breach of trust, particularly where the information is presented as having been approved by experienced professionals, and there has not been a presentation of evidence sufficient to support a reasonable inference that the Gehring Defendants had any reason to know otherwise. Accordingly, Plaintiffs have failed to meet their burden of presenting a genuine issue of material fact on the question of the Gehring Defendants' constructive knowledge of impropriety.

Moreover, each of the Gehring Defendants has submitted a sworn affidavit attesting to the fact that they never saw the F & G Board books that contained information regarding the consumer complaints and sweepstakes issues until they were produced in discovery in this case, and Plaintiffs have offered no evidence rebutting their denials. Plaintiffs alternatively suggest that because each of the Gehring Defendants appointed Stuber to act as their agent in the 1995 stock purchase transaction, and Stuber was present when the F & G Board discussed pending investigations of MBC, had access to other information placing the value of F & G stock in question, and was aware of purported conflicts of interest on the part of Foster, Regal, and Valuemetrics, his knowledge can be imputed to the Gehring Defendants. While the Court agrees that a party-in-interest cannot shield himself/herself from liability by appointing an agent to receive all information in connection with a prohibited transaction, Plaintiffs fail to acknowledge the limited purpose for which the record indicates that

these Defendants appointed Stuber as their agent. The record is simply devoid of evidence indicating that Stuber engaged in any conduct in this capacity other than the ministerial acts of attending the closing in Chicago on their behalves, signing for and taking possession of their checks at the closing, and distributing these checks to the selling shareholders. Stuber did not investigate or receive all preliminary information on behalf of the Gehring Defendants, serve as their financial advisor, or determine whether each of them should participate in the transaction. The suggestion that Stuber's appointment one day prior to the closing solely for the ministerial act of attending and finalizing the 1995 transaction thereby vested each of the Gehring Defendants with any knowledge that Stuber obtained months or even years prior to the beginning of the agency is both readily distinguishable from the authority cited and utterly unpersuasive. *See Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 446 (7th Cir.1994), *citing Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 321 (7th Cir.1992) (finding that knowledge of an agent is imputed to the principal only if the agent receives the knowledge while acting within the scope of his authority and when the knowledge concerns a matter within the scope of that authority); *Frey v. Fraser Yachts,* 29 F.3d 1153, 1158 (7th Cir.1994), *citing Curtis, Collins & Holbrook Co. v. United States,* 262 U.S. 215, 43 S.Ct. 570, 572, 67 L.Ed. 956 (1923); *Kuska v. Folkes,* 73 Ill.App.3d 540, 29 Ill.Dec. 399, 402, 391 N.E.2d 1082 (1979).

From the information that they did receive, the Gehring Defendants were aware that highly qualified and sophisticated firms were involved in investigating, structuring, negotiating, and consummating the stock purchase transactions. The record further reveals that each of the Gehring Defendants reinvested a significant portion of their proceeds from the 1995 transaction in F & G and that half of them declined to participate in the 1997 transaction because they believed that the stock was worth more than was being offered and would continue to increase in value, which is suggestive of a lack of knowledge of impending financial catastrophe. These Defendants have also stated that they relied on the representations made to them by these outside firms, and Plaintiffs have failed to introduce evidence from which a trier of fact could reasonably determine that this reliance was unreasonable.

The Court now finds that even when the record is construed in the light most favorable to the Plaintiffs, they have failed to present specific facts showing that there is any genuine issue of material fact requiring resolution at trial. As no reasonable fact-finder could return a verdict in favor of Plaintiffs against the Gehring Defendants, the Gehring Defendants are entitled to judgment as a matter of law, and their Motion for Summary Judgment is granted.

## CONCLUSION

For the reasons set forth above, the Gehring Defendants' Motion for Summary Judgment [# 378] is GRANTED. Defendants Gehring, Patino, Gregory, Rathmann, Halpin, Swedlund, Kyle, Vandervlugt, Lappegaard, Wilson, McKittrick, and Wright are hereby TERMINATED as parties to this matter.