## NATIONAL CITY BANK v. CARTER.

(Circuit Court of Appeals, Sixth Circuit. October 7, 1926.)

### No. 4438.

**1. Appeal and error ⬤⟹930(1).**

Theory of facts, accepted as true by jury, must be accepted as true on writ of error.

**2. Banks and banking ⬤⟹112—Bank is liable for its vice president's participation in scheme to defraud depositor by facilitating prompt withdrawal of his money.**

Bank is liable for its vice president's participation in scheme of third person to defraud depositor by facilitating prompt withdrawal of depositor's money, in violation of bank's duty to receive and keep depositor's money safely and for his benefit, and which was within scope of vice president's employment.

**3. Banks and banking ⬤⟹228—Evidence held to present jury question whether vice president of bank participated in scheme to defraud depositor, so as to make bank liable.**

Evidence *held* to present jury question as to whether vice president of bank, acting within scope of his employment, participated in scheme to defraud depositor, so as to make bank liable therefor.

**4. Banks and banking ⬤⟹227(2).**

In depositor's action against bank, on theory that its vice president participated in swindle, admission of vice president's reassuring statements, made immediately after consummation of swindle, *held* not error.

**5. Appeal and error ⬤⟹173(1).**

Contention not made in lower court as to matter claimed to defeat recovery will not be considered on writ of error.

**6. Evidence ⬤⟩135(1)—Evidence of defendant's participation in other similar fraudulent schemes, to show dishonest intent, must be kept within strict limits.**

Evidence of defendant's participation in other similar fraudulent schemes, to show his dishonest intent, must be kept within strict limits in criminal and even in civil cases, as tending to try defendant for other crimes and to confuse issue.

**7. Evidence ⬤⟩135(1)—In depositor's action against bank, on theory that bank's vice president participated in swindle, admission of evidence relating to similar loss by another depositor held error, in absence of evidence of vice president's guilty intent.**

In depositor's action against bank, on theory that bank's vice president participated in scheme to defraud him, admission of evidence that another depositor, who withdrew his deposit with vice president's knowledge and lost it through similar swindle perpetrated by person other than one who swindled plaintiff, *held* error, in absence of evidence of vice president's guilty intent.

**8. Banks and banking ⬤⟩227(2)—In depositor's action against bank, on theory that vice president participated in scheme to defraud, admission of evidence as to vice president's illegal dealing in war savings stamps held error.**

In depositor's action against bank, on theory that its vice president participated in scheme to defraud depositor, admission of testimony of post office inspector that about time of plaintiff's transaction he discovered that vice president was dealing in war savings stamps to extent prohibited by law, and that he told bank's president thereof three months thereafter, *held* error.

In Error to the District Court of the United States for the Western District of Tennessee; John J. Gore, Judge.

Action by Edward Carter against the National City Bank. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

A. L. Heiskell and T. K. Riddick, both of Memphis, Tenn. (M. J. Anderson, A. W. Ketchum, and L. M. Smith, all of Memphis, Tenn., on the brief), for plaintiff in error.

Sam O. Bates, of Memphis, Tenn. (L. H. Graves, of Memphis, Tenn., on the brief), for defendant in error.

Before DENISON, DONAHUE, and KNAPPEN, Circuit Judges.

DENISON, Circuit Judge. In the court below Carter recovered a tort judgment against the bank, in an action based on the theory that the bank, through its vice president, while he was acting within the scope of his employment as the bank's agent, participated in swindling Carter out of a large sum of money. More in detail, plaintiff's theory, which there was testimony tending to support, and which was accepted by the jury, was this: Carter, aged, gullible, and living in West Virginia, left his home to go to Little Rock. He first arranged with his home bankers that he would draw out his money and transfer it to Little Rock, if he found there the desirable investment he expected. Later he fell in with Collins and associates, professional and typical confidence men, who easily interested him in their plans for some vastly profitable use of his money, and thereupon they brought him to Memphis. It was necessary to their plans that he should get his money away from his home bankers, who would naturally look out for him, and place it where, when he should reach the point of wanting his money quickly, to give to them to meet the emergency which the scheme would develop, he could get it without embarrassing delays, warnings, or inquiries, and for this purpose the conspirators must have what Collins as a witness called a "right" banker.

Inquiring in the underworld at Memphis for this "right" banker, he was directed to Huntley, the vice president, and in ordinary matters the active manager, of the bank affairs. Thereupon a plan was arranged between Collins and Huntley, which, including what was understood as well as what was said, contemplated that Collins should bring Carter to Huntley in the bank; that Carter should open a deposit account and draw for his West Virginia funds; that when the drafts were cashed, and the money was in the bank to Carter's credit, Collins would be informed; that, when, thereafter, Carter should want the cash for delivery to the conspirators, he should get it quickly; and that, during the progress of the scheme, Huntley should do whatever there was opportunity for to disarm suspicion, and to let the scheme go on without interference. For his services, or his silence, Huntley would receive 10 per cent. of whatever Collins succeeded in getting out of Carter.

The plan was carried out. After the funds had been deposited, Carter came in, wanting the entire amount of cash in a hurry. Huntley personally cashed his check. Carter gave the money to Collins, who disappeared; and after a few hours when Carter became suspicious and came into the bank, Huntley reassured him, and thereby aided in delaying complaint until Collins had time enough to get away.

[1, 2] Upon this theory of fact (which for the purpose of this review we must accept as true, because the jury did), the bank claims that it did nothing except to receive Carter's

money when he wanted to deposit it, and pay it back to him when he wanted to draw it out, and that it carries no responsibility for Huntley's personal participation in the swindle. If no duty were charged against the bank, except the duty to warn Carter, when the cashier knew that the withdrawal of the money by Carter was only a step in a swindle which was going on, and if the only violation of duty charged were the failure to give this warning, it might well be that no cause of action. would appear, 'though few banks would wish to deny that, at least ethically, they owed such duty to warn. The duty here involved is more fundamental. It .is to receive and keep the depositor's money, faithfully, for his benefit. It is a gross and obvious violation of this duty to receive and hold the money as a conscious step in aid of a third party's plan to steal it. The performance of this duty was within the scope of Huntley's employment by the bank; and, if Collins' testimony is true, Huntley was bribed so to conduct himself as vice president as to aid in defrauding the depositor. We 'think the bank cannot escape liability, in a suit where the jury accepts this theory of fact.

[3] Upon this theory the case is easily distinguishable from the Kean-Bank Cases (C. C. A.) 294 F. 214, and 12 F. (2d) 203, in which there was room to say that Huntley was dealing *with* the bank, representing himself or a hostile principal, rather than *for* the bank, as here, and should be classified with those cases which impute liability to the principal, rather than with those which decline to do so. Armstrong v. Ashley, 204 U. S. 272, 282, 27 S. Ct. 270, 51 L. Ed. 482; Curtis, Collins & Holbrook Co: v. U. S., 262 U. S. 215, 222, 43 S. Ct. 570, 67 L. Ed. 956; American Bank v. Miller, 229 U. S. 517, 33 S. Ct. 883, 57 L. Ed. 1310; Skud v. Tillinghast (C. C. A. 6) 195 F. 5, 115 C. C. A. 83. Hence we cannot say that a verdict should have been instructed for defendant.

[4] Complaint is made because testimony was received as to statements made by Carter to Huntley immediately after the money had been given to Collins and when he was presumably escaping. The objection is upon the theory that this is supposed to be the statement of a conspirator, but that it was made after the conspiracy was ended. From this point of view it does not seem that the conspiracy was ended until Collins was beyond reach, and the reassuring statements charged against Huntley were well calculated to aid the perfecting of the fraudulent scheme; but there is no occasion to look to the rule of evidence in conspiracy cases. Hunt-

ley was the agent of the bank; his agency had, not ceased when Carter came to him, as the representative of the bank, for consultation and advice; and when Huntley said that he did not think it was a confidence game, and that probably Carter would get his money back, Huntley knew that Carter regarded his voice as the voice of the bank, and Huntley was assuming for the bank the appropriate rôle of adviser in this emergency. There was no error in receiving this proof.

The court directed the jury that, if it found for the plaintiff, it should be with interest from the date when the money was lost. It is said that such allowance of interest is discretionary with the jury and not obligatory; but no exception was taken to this part of the charge.

[5] It is also urged as a reason why the court should not listen to Carter's complaint that he was himself engaged with Collins in a scheme to defraud others, and hence has unclean hands. This contention needs no consideration, if for no other reason than because it was not made to the court below. The motion for a directed verdict was planted upon other grounds, elaborately specified.

[6, 7] A more serious objection remains. The vital question of fact was whether Collins, in charging Huntley with participation in the scheme, or Huntley, in denying all knowledge of it, told the truth. If about this time Huntley had been engaged in another scheme of the same general type, whereby some other depositor was to be similarly swindled by Huntley's intentional aid, the testimony so indicating would have been, or at least might have been, admissible as tending to show whether Huntley received Carter's deposit with honest or with dishonest intent; but as such evidence in a criminal case tends to put the defendant on trial for other crimes, and even in a civil case to confuse the issue, its admission must be kept within strict limits. Upon the trial of this case, evidence was received that at about this time one Lorton deposited money with this bank through Huntley, drew it out with Huntley's knowledge, and then lost it in a confidence game similar to that perpetrated by Collins; but there was nothing tending to show any connection with Collins, or that Huntley had reason to suspect anything wrong in the Lorton transaction. The admission of this evidence was error; it went beyond the permissible limits. In each of these transactions the bank was blameless, unless for Huntley's guilty intent; lacking evidence of such intent in the second, that transaction cannot serve to show such intent in the first; otherwise, each might

serve to prove the critical intent in the other, though in fact it existed in neither.

[8] There was also error in admitting the testimony of Sugg. He said that as post office inspector he discovered, at about the time of the Carter transaction, that Huntley was dealing in war savings stamps to an extent prohibited by law, and he testified that he told the bank's president about this some three months after the Carter incident. Neither ignorance by the president of those transactions at the time they occurred, nor his knowledge at this later date, could have any bearing on any issue in the case.

We cannot say that the error in admitting these two matters of evidence was not prejudicial to the bank; probably it was. The inferences which doubtless were argued would be likely to have material effect in deciding the issue as to Huntley's good faith.

The judgment is reversed, and the case remanded for a new trial.