## NATIONAL CITY BANK v. CARTER.

Circuit Court of Appeals, Sixth Circuit.
March 12, 1929.

No. 5072.

A. L. Heiskell and T. K. Riddick, both of Memphis, Tenn. (Milton J. Anderson and A. W. Ketchum, both of Memphis, Tenn., on the brief), for plaintiff in error.

L. H. Graves and S. O. Bates, both of Memphis, Tenn. (J. H. Shepherd and Walter Chandler, both of Memphis, Tenn., on the brief), for defendant in error.

Before DENISON, MACK, and HICKS, Circuit Judges.

MACK, Circuit Judge. On the trial held after our decision in 14 F.(2d) 940, each party moved for a directed verdict; judgment was thereupon rendered for plaintiff.

Plaintiff was a retired Virginia planter, without business experience other than in small local matters and wholly ignorant as to stock exchange transactions. While on vacation in Hot Springs he discovered a wallet planted for that purpose by one Furay, alias Collins, head of a band of confidence men. From inspection of its contents he was led to believe that its owner was a confidential agent of Barnes Bros., a New York stock brokerage house, traveling in different cities to buy and sell through local stock exchanges according to telegraphic instructions to be sent in code and kept absolutely secret. No such firm existed.

After reclaiming the wallet, Furay won plaintiff's confidence by asserting that he had speculated on a small scale with his own money for the latter's benefit. He then proposed a major deal in the name of plaintiff but with his own funds, stating that he would use the information to be telegraphed to him the next day. Plaintiff upon promise of a one-quarter share in the contemplated $100,000 profit assented, not expecting in any eventuality to advance money, assume risk, or receive delivery of stock. Furay explained that he needed plaintiff's name in the deal because "I am forbidden to buy stock in my own name, *but I can buy it in outside honest men's names, as I have found you* * * * *to be.*" Appellant vigorously denies that the italicized words were ever said, pointing to their absence from plaintiff's testimony in previous trials before the issue on which they are relevant had been raised.

The next day plaintiff was informed that the transaction upon the market had been successfully carried out, and packages supposedly containing the money won were actually produced for division, when another member of the gang burst into the room, impersonating the superintendent of the local stock exchange. He demanded return of the money on the ground that under the exchange rules purchases and sales could be made only by persons whose financial responsibility had been evidenced by the prior posting of cash with the exchange or local banks. He finally agreed to let the transaction stand if the speculators would show by posting cash that they could have made good if there had been losses. It was agreed that plaintiff should put up $20,000, later increased to $28,000, for the short period required.

Plaintiff returned to Virginia and procured two checks on his banks for $10,000 each and $10,000 more in Liberty bonds. He thereupon joined the confidence men in Memphis, to which they told him all accounts had been transferred. Meanwhile the band had sought for a bank official who would assist them in obtaining plaintiff's funds and quieting his fears; they found one in the person of Huntley, the active vice president of appellant bank. Huntley, for a percentage of the money handled, opened an account for plaintiff with the proceeds of the checks, made him a bank loan upon the security of the Liberty bonds, paid out the money knowing that plaintiff would immediately hand it over to the members of the gang, and reassured him of the honesty of the whole transaction both before plaintiff had parted with his money and after the gang was in flight with it.

█ At this trial, as at the last one, appellant strongly contended that Huntley was not acting as agent of the bank or within the scope of his authority. But it is conceded that the present record is substantially similar to the previous one, and we see no reason to depart from our views as heretofore expressed, since, as we there said, it was the bank's duty "to receive and keep the depositor's money, faithfully, for his benefit. It is a gross and obvious violation of this duty to receive and hold the money as a conscious step in aid of a third person's plan to steal it," it cannot be material that the bank itself did not profit from the theft, or that the officer of the bank who dealt with plaintiff had acquired his knowledge of the scheme in the course of conversations with disreputable persons for his private purposes. As to the latter point, see 2 Mechem, Agency, §§ 1848–1850, and cases there cited.

█ The only new question presented at this trial is whether or not plaintiff must in all these circumstances be denied relief under the doctrine "ex dolo malo non oritur actio." This principle is applicable, it is urged, because plaintiff cannot prove his case without showing that he was guilty "of an immoral act in attempting to take advantage of the

breach of trust on the part of Collins and the wrongful divulgence by Collins of confidential information," and of "an illegal transaction in attempting to profit by the change in the price of stocks or bonds upon the market without the intention of taking the commodity bought or sold."

To this contention there are, however, several answers. In the first place, the record does not establish a belief on plaintiff's part that he was engaging in wrongdoing of either description. According to the testimony of plaintiff at this trial, which the District Judge was entitled to accept, plaintiff was told that Furay was permitted by his employers to speculate in the names of third parties. In the second place, plaintiff did not in fact participate in any wrongdoing, regardless of what he may have believed, since Furay had no employers to betray and no gambling contracts were entered into. In the third place, in so far as there could be any improper subjective mental state on the part of plaintiff, it had been implanted there by the fraud of appellant's coconspirators; therefore the parties were not in pari delicto. Finally, the wrong to Barnes Bros., if any, consisted in permitting Furay to speculate in plaintiff's name; this independent imaginary transaction was supposedly completed before the bank assisted Furay in getting money from plaintiff and running off with it.

Stewart v. Wright (C. C. A.) 147 F. 321, is the case nearest in point. While the bank there was somewhat more closely connected with the conspiracy, the bank official did not as here succeed in convincing the victim that the men preying upon him were honest; the victim Wright unquestionably believed that he was engaging in a dishonest scheme. Farrington v. Stucky (C. C. A.) 165 F. 325, does not overrule the Stewart Case, but merely limits it to cases such as the present. The decision there commented on unfavorably was Basket v. Moss, 115 N. C. 448, 20 S. E. 733, 48 L. R. A. 842, 44 Am. St. Rep. 463, a very different type of case. Marshall v. Lovell (C. C. A.) 19 F.(2d) 751, is clearly not contrary. Modern jurisprudence does not favor the undue extension of the doctrine of ex dolo and like defenses (26 Harv. L. Rev. 738; 35 Harv. L. Rev. 754; 39 Harv. L. Rev. 509); but even in its broadest application the facts of the instant case do not come within it.

Clearly on the submission of the case to the trial judge for determination on motions by each side to direct a verdict, the judgment rendered was fully justified. No error of law appearing, the judgment is affirmed.