**FEDERAL DEPOSIT INS. CORPORATION**
**v. VEST et al.**

**No. 4125.**

District Court, E. D. Kentucky.

Aug. 2, 1939.

Peter, Heyburn, Marshall & Wyatt, Baldwin C. Burnam, Wilson W. Wyatt, and Eugene R. Attkisson, all of Louisville, Ky., for plaintiff.

Vest & Vest, of Walton, Ky., and Rouse, Price & Adams, of Covington, Ky., for defendants.

FORD, District Judge.

The plaintiff, receiver of the Taylor National Bank of Campbellsville, Kentucky, seeks to recover from the defendant John L. Vest, the principal and accrued interest alleged to be due on a promissory note for $10,000 which was executed and delivered by Vest to the bank on January 12, 1937.

The note in suit is the last of a series of renewals, the original of which was executed on January 24, 1935. The facts and circumstances attending the execution of the original and the renewals are not disputed.

The defendant Vest is an attorney residing at Walton, Kentucky. Several years prior to 1935, he had occasion to spend considerable time in Campbellsville on professional business and incidentally became

508

acquainted with T. O. Morton, the president and chief executive officer of the Taylor National Bank. He subsequently represented Morton in important litigation and was associated with him in a business venture. Thus, their acquaintance, which was at first casual, ripened into a rather close and intimate friendship.

On January 24, 1935, they met in Louisville and Morton informed Vest that he needed $10,000; that his bank (referring to the Taylor National Bank) had on hand $100,000 in idle cash, and hence he did not like to go to another bank for a loan, and yet he preferred not to appear as a borrower from his own bank. He requested Vest to sign an accommodation note for him for $10,000 to the Taylor National Bank and agreed to pledge as collateral security for the note 400 shares of Manhattan Railway Modified Guaranteed stock and $4,000 of Cleveland Union Terminal bonds, which securities at that time had a market value in excess of $12,000. Morton further agreed that he would add whatever additional security might be required from time to time to adequately protect and secure the payment of the note, that he would keep the interest paid and when the collateral reached a satisfactory price he would dispose of it and pay the note. Relying upon these assurances, Vest signed the note in blank and delivered it to Morton and at the same time signed and delivered to him a check drawn on the Taylor National Bank for $10,000, which, at Morton's request, was made payable to the Bank of Commerce of Louisville. Morton filled out the note and placed it in the bank, together with the collateral securities, in accordance with the agreement. The loan was duly entered to the credit of Vest and his check paid. Vest received none of the money represented by the loan and derived no benefit whatever from the transaction. It was purely an accommodation to Morton. Vest signed the renewals in blank, when requested, and mailed them to Morton. Vest paid no interest except on one occasion when Morton furnished the money.

At all times referred to Morton was not only the president and chief executive officer of the Taylor National Bank but he owned 76 percent of its capital stock. The evidence convincingly demonstrates that he was in exclusive control of the bank and directed all its operations. The board of directors and loan committee were entirely dominated by him. He exercised the corporate will of the bank in all matters and the acts of all other officers were merely perfunctory. It was a typical "one-man bank".

In the last of March or early in April, 1937, Vest discovered that Morton had removed all the collateral originally pledged for the note and had used it for his own purposes. In admitting his conduct to Vest, Morton said he "got in a jam and transferred it and could not put it back for a few days." On April 12, 1937, Vest went before the board of directors and disclosed to them the facts with reference to this accommodation note and the removal of the collateral. When the bank was closed a few months later, $4,000 in bonds of the Allegheny Corporation appeared to be pledged to secure the note, but these bonds were found to be the property of certain trustees who had placed them in the bank for safekeeping. The use of these bonds by Morton as collateral on the note was entirely unauthorized and they were recovered by the owners.

The plaintiff relies upon the familiar exception to the general rule to the effect that the agent's knowledge will not be imputed to his principal where the agent in the particular transaction acts in his own interests adversely or antagonistically to his principal. This exception does not apply, however, where the agent or officer of a corporation is in such complete control of it and so dominant in its affairs as to be the sole agency through which the corporation exercises its will in participating in the particular transaction. Under such circumstances, the agent and the principal being practically identical, notice to or knowledge of the agent must of necessity be regarded as notice to or knowledge of the principal, even though the agent or officer may have an individual interest in the matter adverse to that of the principal.

The facts disclosed by the evidence bring this case well within this rule, sometimes referred to as the "sole actor" doctrine, as defined and applied in the case of Anderson v. Missouri State Life Insurance Company, 6 Cir., 69 F.2d 794, 798, in which, after first stating that the evidence "fully demonstrates that the corporate will of the Missouri State Life was exercised only by Caldwell or at his bidding", the Court said: "Nor do we see here any escape from the 'sole actor' doc-

trine even in the limited application that was made of it by this court in the third phase of Kean v. National City Bank [6 Cir.], 294 F. 214, and by the Supreme Court in Curtis, Collins & Holbrook Co. v. United States, 262 U.S. 215, 43 S.Ct. 570, 67 L.Ed. 956. When members of a board or committee representing a corporation surrender their powers to an individual, either within or without such board or committee, who completely dominates, and through whom only the corporate powers are exercised, such board or committee is the sole actor, with but a single will and purpose, or else the dominant individual is the sole actor, and the others are to be ignored as if they did not in fact, as they do not functionally, exist. However considered, the principle is the same. So applying the sole actor doctrine, we cannot distinguish this case either from the third phase of the Kean Case, supra, or from the holdings of this court in National City Bank v. Carter [6 Cir.], 14 F.2d 940, and National City Bank v. Carter [6 Cir.], 31 F.2d 25."

While there appears some diversity of opinion as to the true rationale or foundation of the "sole actor" doctrine, its soundness is supported by the great weight of authority. Curtis, Collins & Holbrook Co. v. United States, 262 U.S. 215, 43 S.Ct. 570, 67 L.Ed 956; Anderson v. Missouri State Life Insurance Company, supra; Skud v. Tillinghast, 6 Cir., 195 F. 1, 5; Munroe v. Harriman National Bank, 2. Cir., 85 F.2d 493, 111 A.L.R. 657; Connecticut Fire Insurance Company v. Commercial National Bank, 5 Cir., 87 F.2d 968; Maryland Casualty Company v. Queenan, 10 Cir., 89 F.2d 155.

The contention of the plaintiff that the "sole actor" doctrine does not prevail in Kentucky, or that it is not applicable, under Kentucky law, to the particular facts of this case, seems untenable. The doctrine was recognized in the case of Ohio Valley Banking & Trust Company v. Citizens' National Bank, 173 Ky. 640, 653, 191 S.W. 433, and applied in Citizens' Sav. Bank v. Walden, 52 S.W. 953, 21 Ky.Law Rep. 739, and in Mutual Life Insurance Company v. Chosen Friends Lodge, 93 S.W. 1044, 29 Ky.Law Rep. 394. The fact that in numerous Kentucky cases the point was not raised does not lend support to the plaintiff's contention.

In making the loan for the bank upon the note which he induced Vest to sign, Morton was acting within the scope of his authority. Morton being the bank's sole representative in procuring the note, it cannot claim any right to it except such as it acquired through him, and it cannot take the benefit of his act without taking also the burdens resulting from the agreement which he made and under which he procured the note to be executed. See Connecticut Fire Insurance Company v. Commercial National Bank, supra. The evidence clearly showing a breach of the contract, pursuant to which the note was executed, notice of which is imputed to the bank, recovery on the note is thereby precluded. See Skud v. Tillinghast, supra.

Let findings of fact and conclusions of law, together with judgment in conformity herewith, be submitted for entry.