254 F.Supp.2d 1048 (2003)
Debra KEACH and Patricia Sage, Plaintiffs,
v.
U.S. TRUST COMPANY, N.A., et al., Defendants.
No. 01-1168.
United States District Court, C.D. Illinois, Peoria Division.
February 26, 2003.
*1049 Dean B. Rhoads, Robert Rhode, Edward Sutkowski, Steven Oates, Sean Anderson, Sutkowski & Rhoads, Peoria, IL, for Plaintiffs Debra Keach and Patricia Sage.
Timothy Bertschy, Heyl, Royster, Voelker & Allen, Peoria, IL, Robert Eccles, Shannon M. Barrett, O'Melveny & Myers, LLP, Washington, DC, for Defendant U.S. Trust Company, NA.
Charles Roth, James Springer, Kavanagh, Scully, Sudow, White & Frederick, Peoria, IL, for Defendants Ellen D. Foster, Stephen P. Bartley, Dale Fujimoto, Michael Norbutas, Frederick Stuber, Ashley Anne Foster and Melvyn R. Regal.
Joseph Z. Sudow, Kavanagh, Scully, Sudow, White & Frederick, Peoria, IL, for Defendants Ellen D. Foster, Michael Norbutas, Frederick Stuber, Ashley Anne Foster and Melvyn R. Regal.
Michael T. Graham, Nancy Ross, McDermott, Will & Emery, Chicago, IL, *1050 for Defendants Ellen D. Foster and The Northern Trust Company.
Trent P. Cornell Duane Morris, LLC, Chicago, IL, for Defendant Ellen D. Foster.
Richard J. Pautler, Jennifer Baetje, Thompson & Coburn, St. Louis, MO, for Defendants Robert A. Ostertag, Jr., Terry P. Cole, Alan R. Dix, Jon Elletson and A. Robert Pellegrino.
James Bailey, Paul Ondrasik, Jr., Steptoe & Johnson, Washington, DC, Roy Davis, David Lubben, Davis & Campbell, LLC, Peoria, IL, for Defendants Valuemetrics, Inc.
Mark Casciari, Ian Hugh Morrison, Sari M. Alamuddin, Seyfarth Shaw, Chicago, IL, for Defendant Houlihan, Lokey, Howard & Zukin, Inc.
Stephen Gay, Jeffrey Alan Ryva, Husch & Eppenberger, LLC, Peoria, IL, for Defendant Lyle Dickes.
Jeffrey Rock, Hasselberg, Rock, Bell & Kuppler, Peoria, IL, for Defendants James Freid and Richard Hodgson.
John Elias, Robert Riffle, Cynthia Elias, Elias, Meginnes, Riffle & Seghetti, Peoria, IL, for Defendants William Gehring, Henry Gregory, II, John F. Halpin, James Kyle, John Lappegaard, George Mckittrick, Clayton Patino, Jerry Rathmann, W. Thomas Stumb, Mark Swedlund, Leo Vanderlugt, Robert Wilson and Bruce Wright.
Dean Essig, Washington, IL, for Defendant Gregory McAllister.

ORDER
Now before the Court is a Motion for Summary Judgment by Defendant Ashley Anne Foster. For the reasons set forth below, the Motion for Summary Judgment [# 392] is GRANTED.

FACTUAL BACKGROUND
The basic factual background has been sufficiently set forth in the prior orders of this Court, and familiarity therewith is presumed. The present motion is brought by Ashley Anne Foster, who is sued in her alleged capacity as "a trustee or agent of the Ashley Anne Foster Irrevocable Trust and a party in interest as to the ESOP within the meaning of ERISA." The Ashley Anne Foster Irrevocable Trust (the "Trust") was created on November 6,1987, with the Commercial National Bank of Peoria as trustee. In February 1990, First of America Bank succeeded Commercial National Bank of Peoria as trustee of the Trust, and the trust business was then assigned to First of America Trust Company in May 1990.
On July 25, 1995, the trustee received from Thomas Foster, Ms. Foster's father, stock certificate No. 83 representing 6,475 shares of the common stock of F & G. A receipt for the stock certificate was executed by a trust officer for First of America Bank Trust Company. Stock certificate No. 83, representing the 6,475 shares of F & G stock, was then transferred by the trustee to the F & G ESOP in the December 1995 stock purchase transaction for slightly in excess of $126,000.00. Melvyn Regal ("Regal") executed the December 20, 1995, Stock Purchase Agreement on behalf of the Trust, and that same document appointed Frederick Stuber ("Stuber") to act as the Trust's agent for purposes of attending the closing. The proceeds for the sale were received by the trustee into the Trust's corpus, which was then disbursed to Ms. Foster in November 2001 when she reached the age of 35.
The matter is now fully briefed and ready for resolution. This Order follows.

DISCUSSION
Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, *1051 together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S.Ct. 2548. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Cain v. Lane, 857 F.2d 1139,1142 (7th Cir.1988).
If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex, 477 U.S. at 324, 106 S.Ct. 2548. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir.1989). Summary judgment will be denied where a reasonable fact-finder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir.1995).
Ms. Foster is in this case solely as a purported non-fiduciary party in interest pursuant to § 406(a) of ERISA, which prohibits a "sale or exchange ... of any property between the plan and a party in interest," and also prohibits a "transfer to ... a party in interest ... of any assets of the plan." 29 U.S.C. § 1106(a)(1)(A) and (D). ERISA further defines a "party in interest" to include any fiduciary, person providing services to the plan, an employer, an employee/officer/director or 10% shareholder of an employer, or any relative of these individuals. 29 U.S.C. § 1002(14).
Here, the parties disagree as to whether Ms. Foster is a party in interest. She argues that because she never directly received stock or proceeds from the sale in 1995, and personally had nothing to do with the transaction, she does not meet the statutory definition. Plaintiffs do not respond to this assertion. However, any relative of an officer, director, fiduciary, or 10% shareholder in a company is a party in interest under § 1002(14). As Thomas Foster was an officer, director, and more than 10% shareholder, and Ms. Foster is his daughter, she would qualify as a party in interest under the statutory definition. The question is really whether she ever engaged in any sale or exchange of property with the Plan or whether there was a transfer of Plan assets to her, a required predicate for any possible equitable action for restitution against a party in interest.
In this respect, Ms. Foster argues that she personally neither sold stock to the ESOP nor directly received the proceeds therefrom. Rather, she asserts that the trustee of her Trust performed those acts without her involvement, and the trustee is therefore the proper party to this suit. Plaintiffs argue that Ms. Foster undertook no independent investigation or inquiry with respect to the transactions. However, this puts the cart before the horse, as in doing so, Plaintiffs generally ignore the fact that it was the trustee, not Ms. Foster, that participated in the stock purchase *1052 transaction and received ESOP assets. They then assume that Ms. Foster ultimately received ESOP assets from a wrongdoer (the trustee), which skips the critical step of establishing that the trustee was a wrongdoer.
The Court notes that Plaintiffs make no effort to demonstrate actual knowledge, relying instead on a constructive or imputed knowledge theory. Plaintiffs suggest that because Stuber was appointed to act as the Trust's agent in closing the 1995 stock purchase transaction, and Stuber was present when the F & G Board discussed pending investigations of MBC, had access to other information placing the value of F & G stock in question, and was aware of purported conflicts of interest on the part of Foster, Regal, and Valuemetrics, his knowledge can be imputed. While the Court agrees that a party-in-interest cannot shield himself/herself from liability by appointing an agent to receive all information in connection with a prohibited transaction, the record does not support a finding that this is what happened in this case.
As the Court has noted with respect to the Gehring Defendants, Plaintiffs fail to acknowledge the limited purpose for which the record indicates that Stuber was appointed. The record is simply devoid of evidence indicating that Stuber engaged in any conduct in this capacity other than the ministerial acts of attending the closing in Chicago on the trustee's behalf, signing for and taking possession of the trustee's check at the closing, and distributing the check to the trustee. There is no evidence indicating that Stuber investigated or received all preliminary information on behalf of the trustee bank, served as its financial advisor, or determined whether the trustee should participate in the transaction. As the Court previously held with respect to the Gehring Defendants, the suggestion that Stuber's appointment one day prior to the closing solely for the ministerial act of attending and finalizing the 1995 transaction thereby vested the trustee, let alone Ms. Foster, with any knowledge that Stuber obtained months or even years prior to the beginning of the agency is both readily distinguishable from the authority cited and utterly unpersuasive. See Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 446 (7th Cir.1994), citing Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 321 (7th Cir.1992) (finding that knowledge of an agent is imputed to the principal only if the agent receives the knowledge while acting within the scope of his authority and when the knowledge concerns a matter within the seope of that authority); Frey v. Fraser Yachts, 29 F.3d 1153, 1158 (7th Cir.1994), citing Curtis, Collins & Holbrook Co. v. United States, 262 U.S. 215, 43 S.Ct. 570, 572, 67 L.Ed. 956 (1923); Kuska v. Folkes, 73 Ill.App.3d 540, 29 Ill.Dec. 399, 402, 391 N.E.2d 1082 (1979).
Plaintiffs also attempt to argue that knowledge should be imputed based on the somewhat unclear involvement of Regal in signing the Stock Purchase Agreement on behalf of the Trust. Once again, however, they utterly fail to make any attempt to demonstrate the fact, scope, or duration of any "agency" by Regal. There is neither direct evidence nor reasonable inference in this record which even begins to suggest why Regal did sign the Stock Purchase Agreement for the Trust. Plaintiffs have not cited to the Trust document, deposition testimony, or anything else in the record indicating that Regal was appointed as the trustee's agent for purposes of consummating the 1995 transaction or had any other role with respect to the Trust that vested him with such authority. In fact, from the Court's perspective, it would appear that Regal had no authority whatsoever to execute the *1053 Stock Purchase Agreement on behalf of the Trust. But even assuming that Regal had authority to execute the Stock Purchase Agreement, Plaintiffs have offered no evidence indicating that Regal's authority extended any further than that one act or that the "agency" began at any time prior to the execution of the Stock Purchase Agreement on December 20, 1995.
As Plaintiffs have had more than adequate discovery in this case, the lack of any attempt to introduce evidence in this respect compels the rejection of the argument that any "agency" by Regal was sufficient to justify the imputation of his knowledge to the trustee. At summary judgment, Plaintiffs cannot rest on the unsupported allegation that because Regal signed one document on behalf of the Trust on the day before the sale was consummated, he must have been the Trust's agent for other purposes and for a longer period of time; such an inference cannot reasonably be drawn on the record before the Court. Rather, Plaintiffs must introduce facts sufficient to create a genuine issue as to the scope and duration of any "agency," and Plaintiffs have failed to meet this burden. Therefore, the suggestion that any of Regal's knowledge obtained prior to that time and in other capacities can be imputed to the trustee is rejected for the same reasons and under the same authority as set forth above with respect to Stuber.
As it was the trustee (who is not and never has been a Defendant in this case) that received assets from the ESOP in exchange for shares of F & G stock that constituted more than nominal consideration, and Plaintiffs have failed to make any showing that First of America, as trustee of Ms. Foster's Trust, had or reasonably should have had any knowledge of the circumstances that purportedly rendered the 1995 transaction unlawful, the Court must conclude that First of America took the proceeds of the sale as a bona fide purchaser for value without notice of impropriety. As a result, the Court finds that First of America acquired a higher right in the proceeds and took the property free from any constructive trust that might have otherwise been imposed. Harris Trust & Savings Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 120 S.Ct. 2180, at 2189, 147 L.Ed.2d 187 (2000), citing Moore v. Crawford, 130 U.S. 122, 128, 9 S.Ct. 447, 32 L.Ed. 878 (1889). Once that chain was broken, Ms. Foster's subsequent receipt of those proceeds was insulated from recovery under the restitution theory contained in Count IX of Plaintiffs' complaint. See Harris Trust, 120 S.Ct. at 2189 (noting that once a purchaser takes property in food faith and without notice, the chain is broken and that person or any subsequent holder "takes the property relieved from the trust.")
Plaintiffs make the additional argument that Ms. Foster was a gratuitous donee because she did not provide consideration to the trustee in exchange for the disbursement of the Trust estate under the terms of the Trust. With all due respect, the Court finds this assertion irrelevant. It is the sale of stock between the trustee and U.S. Trust that must have been "for value" and in good faith without knowledge of impropriety. There is no dispute that shares of stock were in fact transferred in exchange for the monetary payment in that transaction, making the transaction non-gratuitous, and the Court has concluded that there is no evidence indicating a lack of good faith or knowledge of impropriety by First of America.
Plaintiffs cite § 468 of Scott on Trusts for the proposition that "[w]here the wrongdoer acquires title to property by fraud, duress, or undue influence, he may transfer the property to a third person. If the third person ... does not pay value, he *1054 holds the property subject to the constructive trust for the person wronged." (emphasis added). Similarly, Plaintiffs quote § 510 of Scott on Trusts: "If the wrongdoer himself exchanged the property for other property and then gave the product to one who paid no value, the [equitable] claimant is entitled to the product. The constructive trust that attached to the product before it was transferred is not cut off by the transfer." (emphasis added).
The problem with the authority relied on by Plaintiffs is that it assumes that the person or entity that first received the proceeds from the ESOP (in this case, the trustee of Ms. Foster's Trust) was a wrongdoer or acted fraudulently, which has not been established here. Absent such a showing, Plaintiffs have not cited and the Court is otherwise unaware of any authority standing for the proposition that simply by receiving the proceeds of the Trust in accordance with the terms of the trust document, Ms. Foster needed to provide additional consideration in order to lawfully possess the trust estate. Even under the authority cited by Plaintiffs, she would only be vested with such a burden upon a showing that the trustee, First of America, was not a bona fide purchaser because it had knowledge or reasonably should have known of circumstances rendering the 1995 stock purchase transaction unlawful or otherwise acted fraudulently. Accordingly, the Court finds Plaintiffs' gratuitous donee argument to be unavailing.
At the time this litigation was commenced, the bank was still the trustee of the Trust, and the proceeds had not been disbursed to Ms. Foster. Nothing prevented Plaintiffs from suing the trustee and seeking restitution based on the claim that it was not a bona fide purchaser. For whatever reason, Plaintiffs chose not to pursue this course, and this decision has proven to be fatal. In order to preserve any claim that Plaintiffs could potentially have had against Ms. Foster, they would have had to first assert and prove that when the trustee bank received the proceeds from the sale of the stock into the Trust, the trustee did so with actual or constructive knowledge of circumstances that rendered the transaction unlawful. This would then have served as a predicate for the claim that Ms. Foster subsequently took the proceeds subject to a constructive trust in favor of the F & G ESOP and its beneficiaries. However, as a result of the failure to assert and prove that the bank trustee acted improperly, the chain is irretrievably broken, and the Plaintiffs are now foreclosed from attempting to recover the money in Ms. Foster's possession under the restitution theory asserted in Count IX of the First Amended Complaint.
Thus, the Court now finds that even when the record is construed in the light most favorable to the Plaintiffs, they have failed to present specific facts showing that there is any genuine issue of material fact requiring resolution at trial. As no reasonable fact-finder could return a verdict in favor of Plaintiffs against Ms. Foster, she is entitled to judgment as a matter of law, and her Motion for Summary Judgment is granted.

CONCLUSION
For the reasons set forth above, Defendant Ashley Anne Foster's Motion for Summary Judgment [#392] is GRANED. Defendant Ashley Anne Foster is hereby TERMINATED as a party to this matter.