254 F.Supp.2d 1055 (2003)
Debra KEACH and Patricia Sage, Plaintiffs,
v.
U.S. TRUST COMPANY, N.A., et al., Defendants.
No. 01-1168.
United States District Court, C.D. Illinois.
February 26, 2003.
Dean B. Rhoads, Robert Rhode, Edward Sutkowski, Steven Oates, Sean Anderson, *1056 Sutkowski & Rhoads, Peoria, IL, for Plaintiffs Debra Keach and Patricia Sage.
Timothy Bertschy, Heyl, Royster, Voelker & Allen, Peoria, IL, Robert Eccles, Shannon M. Barrett, O'Melveny & Myers, LLP, Washington, DC, for Defendant U.S. Trust Company, NA.
Charles Roth, James Springer, Kavanagh, Scully, Sudow, White & Frederick, Peoria, IL, Michael T. Graham, Nancy Ross, McDermott, Will & Emery, Chicago, IL, Trent P. Cornell, Duane Morris, LLC, Chicago, IL, for Defendants Ellen D. Foster.
Michael T. Graham, Nancy Ross, McDermott, Will & Emery, Chicago, IL, for Defendant The Northern Trust Company.
Richard J. Pautler, Jennifer Baetje, Thompson & Coburn, St. Louis, MO, for Defendants Robert A. Ostertag, Jr., Terry P. Cole, Alan R. Dix, Jon Elletson and A. Robert Pellegrino.
James Bailey, Paul Ondrasik, Jr., Steptoe & Johnson, Washington, DC, Roy Davis, David Lubben, Davis & Campbell, LLC, Peoria, IL, for Defendants Valuemetrics, Inc.
Mark Casciari, Ian Hugh Morrison, Sari M. Alamuddin, Seyfarth Shaw, Chicago, IL, for Defendant Houlihan, Lokey, Howard & Zukin, Inc.
Charles Roth, James Springer, Kavanagh Scully Sudow White & Frederick, Peoria, IL, for Defendants Stephen P. Bartley, Dale Fujimoto.
Stephen Gay, Jeffrey Alan Ryva, Husch & Eppenberger, LLC, Peoria, IL, for Defendant Lyle Dickes.
Jeffrey Rock, Hasselberg, Rock, Bell & Kuppler, Peoria, IL, for Defendants James Freid and Richard Hodgson.
John Elias, Robert Riffle, Cynthia Elias, Elias, Meginnes, Riffle & Seghetti, Peoria, IL, for Defendants William Gehring, Henry Gregory, II, John F. Halpin, James Kyle, John Lappegaard, George McKittrick, Clayton Patino, Jerry Rathmann, W. Thomas Stumb, Mark Swedlund, Leo Vanderlugt, Robert Wilson and Bruce Wright.
Dean Essig, Washington, IL, for Defendant Gregory McAllister.
Charles Roth, James Springer, Joseph Sudow, Kavanagh Scully Sudow White & Frederick, Peoria, IL, for Defendants Michael Norbutas, Frederic Stuber, Ashley Anne Foster, Melvyn R. Regal.

ORDER
MIHM, District Judge.
Now before the Court is a Motion for Summary Judgment by Defendant Gregory McAllister ("McAllister"). For the reasons set forth below, the Motion for Summary Judgment [# 418] is GRANTED.

FACTUAL BACKGROUND
The basic factual background has been sufficiently set forth in the prior orders of this Court, and familiarity therewith is presumed. The present motion is brought by Defendant McAllister, who is in this suit only as a party-in-interest in Count IX of the First Amended Complaint. He was the Vice President of Metro Telephone, a subsidiary of F & G. The matter is now fully briefed and ready for resolution. This Order follows.

DISCUSSION
Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that *1057 demonstrate the absence of a triable issue. Celotex Corp. v. Catrett, 411 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S.Ct. 2548. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 411 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir.1988).
If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex, 411 U.S. at 324, 106 S.Ct. 2548. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir.1989). Summary judgment will be denied where a reasonable fact-finder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 411 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Hedberg v. Indiana Bell Tel. Co., 41 F.3d 928, 931 (7th Cir.1995).
McAllister is in this case solely as a nonfiduciary party-in-interest pursuant to § 406(a) of ERISA, which prohibits a "sale or exchange ... of any property between the plan and a party in interest," and also prohibits a "transfer to ... a party in interest ... of any assets of the plan." 29 U.S.C. § 1106(a)(1)(A) and (D). ERISA further defines a "party in interest" to include any fiduciary, person providing services to the plan, an employer, an employee/officer/director or 10% shareholder of an employer, or any relative of these individuals. 29 U.S.C. § 1002(14). There is no dispute that McAllister qualifies as a party in interest.
As the Court has previously held and hereby incorporates by reference, once Plaintiffs establish that the purchases of stock by the ESOP constituted a prohibited transaction under § 406, § 502(a)(3) then provides a right of action to seek appropriate equitable relief from parties in interest to redress the violation. Harris Trust v. Salomon Smith Barney, Inc., 530 U.S. 238, 120 S.Ct. at 2188, 147 L.Ed.2d 187 (2000), citing § 502(Z)(1)(B). Borrowing from the law of trusts, the Defendants can then invoke the substantive equivalent of a modified bona fide purchaser defense by establishing that they gave value for the trust property. If the Defendants are able to make such a showing, a presumption of good faith attaches, and the burden shifts back to the Plaintiffs to establish that Defendants acted in bad faith or had actual or constructive notice of the circumstances that rendered the transaction unlawful.
Plaintiffs have conceded that at least for purposes of these motions, they do not contest that the stock purchase transactions were for "value" in the sense that they were not gratuitous but rather involved consideration that was more than nominal. Accordingly, McAllister is entitled to a presumption of good faith and lack of knowledge unless Plaintiffs are able to rebut that presumption.
Initially, the Court notes that Plaintiffs make no effort to demonstrate actual knowledge, relying instead on a constructive knowledge theory. In this respect, Plaintiffs argue that McAllister undertook no independent investigation or inquiry with respect to the transactions. *1058 However, this puts the cart before the horse, as he is not a fiduciary, and the law does not impose such an onerous duty on non-fiduciaries in the absence of notice of the need to do so. In addition to being a nonfiduciary, McAllister was not a Board Member, Executive Committee Member, or member of the ESOP Administrative Committee. He was not employed in the financial department of F & G or by MBC, and to his knowledge, business was quite good for F & G at the time of the transactions, as F & G continued to have a strong financial performance through the first two quarters of 1997. Moreover, the Court is unaware of any evidence linking McAllister to the process of structuring the stock purchase transactions, determining the value of shares to be sold, or negotiating the stock purchase price. In fact, he was not even directly involved in the operations of F & G but rather was employed by an F & G subsidiary. Access to certain information that was made available or known to the F & G Board or Executive Committee or other top F & G executives cannot be presumed but must be proven, and it is that proof that is lacking here.
Plaintiffs attempt to demonstrate knowledge by stating that McAllister was involved in the due diligence process when F & G bought MBC in 1992 and received copies of checklists indicating the types of information that F & G wanted to obtain.
McAllister's uncontradicted testimony, however, reveals that his involvement in the MBC due diligence was limited to reviewing MBC's telecommunications capabilities.
Plaintiffs then insinuate that the difference in the due diligence performed in 1995 from the investigation that was performed with the acquisition of MBC in 1992 should have put McAllister on notice of impropriety. Even assuming that he had some basis to know that the due diligence that was performed by U.S. Trust and its advisors was less than had been performed with respect to MBC in 1992, Plaintiffs' bald assertion that the scope of due diligence for the stock purchase transaction should necessarily have been of the same magnitude as the due diligence done by the company in preparation for the potential acquisition of a new corporation to be integrated into the F & G family is both nonprobative and logically unsound. Plaintiffs further argue that McAllister knew or should have known that U.S. Trust and Houlihan Lokey had resolved to rely on the representations of F & G management when conducting its due diligence, citing to the engagement letter between U.S. Trust and F & G. However, Plaintiffs fail to demonstrate that he obtained or was aware of this information. At this stage in the litigation, this failure is inexcusable, as assertions without factual support in the record cannot survive summary judgment.
Plaintiffs make reference to an August 4, 1992, interoffice memorandum authored by Lyle Dickes in connection with F & G's due diligence in purchasing MBC which includes various reports making critical comments about MBC's business practices. However, McAllister is not on the distribution list for receiving this memorandum, and Plaintiffs make no effort to demonstrate that he was otherwise aware of its contents or the assertions made therein.
Plaintiffs then note that "Dependency on sweepspossible threats" and "Governmental regulation" were listed among the topics to be discussed at a summer leadership meeting in 1993. Although McAllister attended this meeting, there is no indication in the documents cited that these discussions involved anything other than presenting a possible business problem or inefficiency for which a corrective solution was being proposed for action in the near term. There is no indication of attorney *1059 general investigations, regulatory inquiries, or anything else that would indicate that the situation was critical or exposing MBC, and therefore F & G, to imminent financial ruin, particularly as McAllister would also have been aware that F & G and MBC continued to make record profits despite these possible problems.
McAllister attended a Summer Leadership Meeting at the Peoria Country Club, the purpose of which was to discuss the proposed ESOP transaction. However, Plaintiffs have introduced no evidence indicating that this meeting was anything more than a general overview of the transaction plus the opportunity for shareholder participants to ask preliminary questions.
Plaintiffs also cite to correspondence from Norbutas in June and July 1995 and a December 1995 tax opinion from Price Waterhouse as evidence of knowledge but fail to recognize that McAllister is not an indicated recipient of any of this correspondence. On November 2, 1995, a memorandum was sent to "All Peoria Officers" announcing the closing of MMI as "[cjhanges in the stampsheet/sweepstakes business have had a very negative effect on the magazine agency business." Again, the Court finds this evidence non-probative of the requisite notice or knowledge.
On November 14, 1995, there was another meeting at the Country Club where certain officers were updated as to the details of the proposed stock purchase transaction. In is unclear from the record whether McAllister was present for this meeting; however, even assuming that he was present, the testimony of others who attended that meeting indicates that what was discussed was nothing more than a general overview of the transaction plus the opportunity for shareholder participants to obtain information regarding their personal participation in the transaction. There is no indication that any of the discussion would have reasonably put McAllister on notice that inadequate due diligence was being conducted or that material information was being withheld from the trustee and its advisors.
McAllister received a copy of a Confidential Disclosure Memorandum dated November 10, 1995, which contained the general structure of the proposed ESOP transaction, as well as information particular to his individual participation. On pages 16-17 of their response brief, Plaintiffs cite portions of the Disclosure Memorandum which actually cut in favor of McAllister, as they put him on notice that as the ESOP Trustee, U.S. Trust had certain obligations: it must comply with ERISA; it might be required to override company instructions if fiduciary issues arise; it must demonstrate its loyalty to the interests of the ESOP beneficiaries; and it must exercise appropriate prudence and diligence. The Disclosure Memorandum also represented that the price was the result of arms-length negotiations and that certain factors that could affect the post-transaction value of the shares had been considered in some fashion. At best, the document put McAllister on notice of the fact that book value restrictions were being removed and vesting of shares was being accelerated for the transaction. While this information may have put him on notice that he was getting a good deal, it would not cause a reasonable person in his position to infer that something sinister or improper was afoot.
Plaintiffs then point to the representations made by all of the selling shareholders in the Agreements to Purchase Stock. Specifically, they cite paragraph 3.B. of the Recitals section, which acknowledges that each seller has received a copy of and is familiar with the Disclosure Memorandum with its exhibits and enclosures, including the Private Placement Memorandum from BA Securities, Inc., F & G's audited financial *1060 statements, and Valuemetrics' Transaction Memorandum. McAllister also received a confidential memorandum from Regal dated November 29, 1995. In this memorandum, Regal notes a decline in the market value of most publicly traded direct marketing companies and then goes on to state that this fact "greatly influenced the decision process of the ESOP Trustee, U.S. Trust Company, its financial advisor, Houlihan Lokey Howard & Zukin and ourselves in reaching an agreement on a price for the stock that we would sell to the ESOP." This would have been completely consistent with their knowledge that the purchase price for the 1995 transaction had been negotiated down from $24.00 per share to $19.50 per share. On December 7, 1995, Valuemetrics issued a Confidential Transaction Memorandum that was distributed to each of these Defendants, providing them with a detailed explanation of the mechanics of the stock purchase transaction.
With all due respect, the information discussed in the preceding paragraphs, even when considered cumulatively with all inferences reasonably drawn therefrom, does not establish constructive knowledge of a breach of trust, particularly where the information is presented as having been approved by experienced professionals, and there has not been a presentation of evidence sufficient to support a reasonable inference that McAllister had any reason to know otherwise. Accordingly, Plaintiffs have failed to meet their burden of presenting a genuine issue of material fact on the question of McAllister's constructive knowledge of impropriety.
Moreover, McAllister has submitted a sworn affidavit attesting to the fact that he: (1) had no involvement with MBC's strategic plans or financial projections; (2) never saw the F & G Board books that contained information regarding the consumer complaints and sweepstakes issues until they were produced in discovery in this case; (3) was not involved in the decisions of the F & G Board, Executive Committee, or any other committee involved in that transaction; (4) was not aware of any significant issue or concern relating to sweepstakes issues until several years after the 1995 transaction; and (5) was not involved in structuring the ESOP transactions or determining, negotiating, or establishing the price per share. Plaintiffs have offered no evidence rebutting his denials.
Plaintiffs alternatively suggest that because McAllister appointed Stuber to act as his agent in the 1995 stock purchase transaction, and Stuber was present when the F & G Board discussed pending investigations of MBC, had access to other information placing the value of F & G stock in question, and was aware of purported conflicts of interest on the part of Foster, Regal, and Valuemetrics, his knowledge can be imputed to McAllister. While the Court agrees that a party-ininterest cannot shield himself/herself from liability by appointing an agent to receive all information in connection with a prohibited transaction, Plaintiffs fail to acknowledge the limited purpose for which the record indicates that Stuber was appointed to serve as McAllister's agent. The record is simply devoid of evidence indicating that Stuber engaged in any conduct in this capacity other than the ministerial acts of attending the closing in Chicago on his behalf, signing for and taking possession of his check at the closing, and distributing the check to him. Stuber did not investigate or receive all preliminary information on behalf of McAllister, serve as his financial advisor, or determine whether he should participate in the transaction. The suggestion that Stuber's appointment one day prior to the closing solely for the ministerial act of attending and finalizing the 1995 transaction thereby *1061 vested McAllister with any knowledge that Stuber obtained months or even years prior to the beginning of the agency is both readily distinguishable from the authority cited and utterly unpersuasive. See Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 446 (7th Cir.1994), citing Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 321 (7th Cir.1992) (finding that knowledge of an agent is imputed to the principal only if the agent receives the knowledge while acting within the scope of his authority and when the knowledge concerns a matter within the scope of that authority); Frey v. Fraser Yachts, 29 F.3d 1153, 1158 (7th Cir.1994), citing Curtis, Collins & Holbrook Co. v. United States, 262 U.S. 215, 43 S.Ct. 570, 572, 67 L.Ed. 956 (1923); Kuska v. Folkes, 73 IU.App.3d 540, 29 Ill.Dec. 399, 402, 391 N.E.2d 1082 (1979).
From the information that he received, McAllister was aware that highly qualified and sophisticated firms were involved in investigating, structuring, negotiating, and consummating the stock purchase transactions. The record further reveals that he reinvested a significant portion of his proceeds from the 1995 transaction in F & G, which is suggestive of a lack of knowledge of impending financial catastrophe. McAllister has also stated that he relied on the representations made to him by these outside firms, and Plaintiffs have failed to introduce evidence from which a trier of fact could reasonably determine that this reliance was unreasonable. Plaintiffs' attempt to suggest that all of the selling shareholders, regardless of their positions or level of involvement, had equal access to a "wealth of information" concerning the transactions and the circumstances underlying them belies the inadequacy of their position. Thus, Plaintiffs have failed to make a showing sufficient to survive summary judgment with respect to this particular Defendant.
The Court now finds that even when the record is construed in the light most favorable to the Plaintiffs, they have failed to present specific facts showing that there is any genuine issue of material fact requiring resolution at trial. As no reasonable fact-finder could return a verdict in favor of Plaintiffs against McAllister, he is entitled to judgment as a matter of law, and his Motion for Summary Judgment is granted.

CONCLUSION
For the reasons set forth above, Defendant McAllister's Motion for Summary Judgment [#418] is GRANTED. McAllister is hereby TERMINATED as a party to this matter.